596 F.2d 300
 John LEIMBACH, as father and natural guardian on Behalf of
George A. Leimbach and Diane M. Leimbach, minors
over the age of fourteen years, Appellees,
v.
Joseph A. CALIFANO, Jr., Secretary of Health, Education and
Welfare, or his Successors in Office, Appellant.
 No. 78-1561.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 13, 1979.
Decided April 2, 1979.
 
 Stanley Ericsson, Baltimore, Md., argued, Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Robert D. Kingsland, U. S. Atty., and Anne C. Travis, Asst. U. S. Atty. Gen., St. Louis, Mo., and Lille Price, Atty. Gen. Counsel, Dept. of HEW, Baltimore, Md., on brief, for appellant.
 Patrick B. Cummings, St. Louis, Mo., argued, and Harry J. Nichols, St. Louis, Mo., on brief, for appellees.
 Before GIBSON, Chief Judge, and HENLEY, Circuit Judge, and HANSON, Senior District Judge.*
 HENLEY, Circuit Judge.
 
 
 1
 The Secretary of Health, Education and Welfare (the Secretary) appeals the decision of the district court granting the children of appellee John Leimbach child's insurance benefits retroactive to September, 1968. We reverse.
 
 
 2
 This is a dispute over the date on which John and Rosemary Leimbach's two children became entitled to child's insurance benefits under § 202(d) of the Social Security Act (the Act), 42 U.S.C. § 402(d). Rosemary Leimbach, the wage earner upon whose earnings record benefits are being sought, died on January 20, 1967. And it is not disputed that her children became eligible for benefits in February of 1968, the effective date of the December, 1967 amendments to the Act which removed certain restrictions on eligibility for child's insurance benefits based on the earnings record of married women. However, the Secretary and Mr. Leimbach disagree as to when the children became entitled[1] to receive these benefits.
 
 
 3
 On November 9, 1967 Mr. Leimbach applied to the Social Security Administration (the Agency) for lump-sum death benefits as the surviving spouse of his deceased wife. But he did not inquire as to his children's eligibility for benefits until sometime in September of 1968. He was then erroneously informed at the local Agency office that the children were not eligible for child's insurance benefits.[2] Leimbach addressed additional oral inquiries concerning this matter to the Agency at various times during 1970, 1971 and 1972 but always received the same response. In early 1975 he independently learned of his children's eligibility through a newspaper article. He then managed to reach a knowledgeable Agency employee who accepted a written application for child's insurance benefits on June 26, 1975. The Agency, pursuant to § 202(j)(1) of the Act, 42 U.S.C. § 402(j)(1), granted this application one year of retroactivity and found the children entitled to benefits effective June, 1974.
 
 
 4
 Mr. Leimbach sought an administrative reconsideration of this determination, asserting that his children were entitled to benefits as of September, 1968 when he first inquired about their eligibility and was erroneously informed that they were ineligible. An administrative hearing was held at which Leimbach testified concerning his numerous attempts to ascertain the rights of his children. The Administrative Law Judge (ALJ) expressed concern over the Agency's repeated failure to provide Leimbach with correct information but agreed with the Agency that the children's retroactive entitlement date was June, 1974 because Leimbach had failed to file until June of 1975 a written application as required by Agency regulations. See 20 C.F.R. § 404.601(c) and (d); 20 C.F.R. § 404.613. The ALJ's decision was affirmed by the Agency's Appeals Counsel. Leimbach then brought this action in district court seeking judicial review of this final agency determination.
 
 
 5
 The district court granted Leimbach's motion for summary judgment, awarding the Leimbach children benefits as if written application had been made in 1968. The court felt that its decision was controlled by the previous district court opinion in Holmes v. Weinberger, 423 F.Supp. 149 (E.D.N.Y.1976). The Holmes court, in effect, held the Agency's written application requirement invalid as violative of the broad compensatory purposes of the Act. The Agency now appeals the district court's judgment and asks that we reject the Holmes rationale and uphold the validity of the written application requirement.
 
 
 6
 In our view this case presents two distinct issues. First we must determine whether the Agency's regulations requiring written applications as a condition precedent to entitlement are valid. Secondly, if these requirements are valid, we must then determine whether the actions of the Agency's employees in misinforming Mr. Leimbach about his children's eligibility should estop the Agency from applying its regulations to bar the children's entitlement until June of 1974.
 
 
 7
 Validity of the Regulations.
 
 
 8
 Since October of 1955 the Agency has operated under self-imposed regulations requiring all applicants for child's insurance benefits to file written applications on special forms supplied by it.[3] In some instances the special forms need not be submitted, but the applications must always be in writing.[4] Yet, from 1946 until the adoption of the present regulations in 1955, the Agency accepted oral applications in a limited number of circumstances. Regulation 403.701(f)(2), for example, recognized oral applications where the applicant had not filed a written application because an Agency employee had failed to "inform (the applicant) concerning the requirements of the Act or the Administration's regulations thereunder . . . ." 20 C.F.R. § 403.701(f)(2), cited in pertinent part at 423 F.Supp. 153. See also 20 C.F.R. §§ 403.701(b)(1) and (k)(1).
 
 
 9
 The Holmes court would apparently hold the Agency's present regulations invalid and would require the Agency to recognize the oral application procedures embodied in its pre-1955 regulations as consistent with and required by the underlying compensatory policies and purposes of the Act. The court noted that the language of the Act only requires an "application" and does not specify that the application be in writing. See, e. g., 42 U.S.C. § 402(d) (1)(A). And it found nothing in the legislative history of the Act supporting the Agency's view that a written application should be required. There, as here, the applicant had failed to comply with the written application requirement because of ill-conceived advice from Agency employees and would probably have qualified for benefits under the pre-1955 regulations. The court felt that such applicants were not mere "recipients of handouts" but were instead "beneficiaries of insured wage earners, 'entitled to no less than a liberal and broad construction (of the Act) will allow.' " Holmes v. Weinberger, supra, 423 F.Supp. at 154, Citing Rosenberg v. Richardson, 538 F.2d 487, 490 (2d Cir. 1976). See also Tuck v. Finch, 430 F.2d 1075 (4th Cir. 1970); Crumpler v. Califano, 443 F.Supp. 342 (E.D.Va.1978).
 
 
 10
 The Holmes decision, however, goes against the weight of numerous judicial decisions upholding the validity of the Agency's written application requirement. See, e. g., Goff v. Weinberger, CCH UIR P 14,470 (D.Conn.1975), Aff'd, 538 F.2d 309 (2d Cir. 1976), Cert. denied, sub nom. Goff v. Matthews, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976); Parker v. Finch, 327 F.Supp. 193 (N.D.Ga.1971); Mandelstram v. Celebrezze, CCH UIR P 14,733 (E.D.N.Y. March 17, 1967); Emerson v. Celebrezze, CCH UIR P 14,237 (M.D.Ga. June 7, 1965); Smaltz v. Ribicoff, CCH UIR P 14,623 (W.D.Mo. Sept. 27, 1962); Flamm v. Ribicoff, 203 F.Supp. 507 (S.D.N.Y.1961); McNally v. Flemming, 183 F.Supp. 309 (D.N.J.1960).
 
 
 11
 In general, these cases recognize that § 205(a) of the Act, 42 U.S.C. § 405(a), vests in the Secretary the authority to make rules and regulations necessary and appropriate for the administration of the Act.[5] And while it is true that the Act itself does not specify that applications for benefits be made in writing, 42 U.S.C. § 402(d), the Secretary, acting under his § 205 rule making powers, has promulgated regulations requiring that written applications for benefits be filed on special Agency forms. Such regulations must be sustained by the courts as long as they are " 'reasonably related to the purposes of the enabling legislation'." Mourning v. Family Publications Service, Inc., 411 U.S. 356, 369, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1972); Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 280-81, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). See also American Trucking Ass'n v. United States, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953). We have carefully reviewed the above decisions and agree with the majority view that the Agency's written application requirement is reasonably related to the need for prompt and effective administration of the Act. As the district court in Goff v. Weinberger, supra, CCH UIR P 14,470, stated,
 
 
 12
 The Social Security Act, supplemented by its regulations, was intended to eliminate or at least reduce to a minimum the possibility of fraud, confusion, and laxity in its administration. The vastness of the program makes it essential to adhere to the written application procedure, if there is to be an orderly and controllable system of management for approving claims and paying out insurance benefits.
 
 
 13
 Contrary to the position taken by the Holmes court, the fact that the Agency has operated and could now operate under oral application procedures does not per se establish the invalidity of the written application requirement. This is true even though the Holmes rationale finds some support in the express congressional purpose of having the Act liberally construed and applied to provide benefits for all eligible persons. See, e. g., Eisenhauer v. Mathews, 535 F.2d 681, 686 (2d Cir. 1976), and cases cited therein.
 
 
 14
 The Agency had almost a decade of experience with oral application procedures and doubtless chose to abandon those procedures because of the practical difficulties in administering them. The Secretary's decision to require written applications reflects his experience and special Agency expertise in the day-to-day administration of the Act. We believe that the Secretary's decision is entitled to respect as a valid exercise of the Secretary's rule making powers. We do not feel at liberty to substitute our view as to appropriate application procedure for that of the Secretary when he has chosen a procedure reasonable related to the legitimate purpose of engendering effective administration. N. L. R. B. v. United Insurance Co. of America, 390 U.S. 254, 260, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1967); Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1950).
 
 
 15
 Estoppel.
 
 
 16
 Mr. Leimbach's complaint and memorandum in support of his motion for summary judgment contain general assertions that the Agency should be estopped from applying its written application requirement to reduce his children's entitlement. He argues that he failed to file a timely application only because he was misled by the erroneous statements of Agency employees. The district court did not address these assertions since it disposed of the case on the basis of the Holmes decision which expressly avoided the estoppel issue by holding the Agency's current regulations invalid. Holmes v. Weinberger, supra, 423 F.Supp. at 152-53. Since we hold these regulations valid, we proceed to address the estoppel issue.
 
 
 17
 Several of the courts which have upheld the written application requirement have also been faced with claims that the Agency should have estopped from applying it because of misconduct on the part of Agency employees. These courts have uniformly held that estoppel will not lie against the Agency where an applicant has simply received misinformation on which he relied to his detriment. See, e. g., Parker v. Finch, supra, 327 F.Supp. at 195; Emerson v. Celebrezze, supra, CCH UIR P 14,237; Flamm v. Ribicoff, supra, 203 F.Supp. at 510.
 
 
 18
 This view is in accord with the general rule that estoppel will not lie against the government for the misrepresentations of its agents. As the Supreme Court stated in Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947), "(w)hatever form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." See also Rock Island, Arkansas & Louisiana R. R. Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 65 L.Ed. 188 (1920). The Merrill rule was recently reaffirmed by the Court in United States Immigration & Naturalization Service v. Hibi, 414 U.S. 5, 8, 94 S.Ct. 19, 21, 38 L.Ed.2d 7 (1973), where it was said: " 'As a general rule, laches or neglect of duty on the part of officers of the Government is no defense to a suit by it to enforce a public right or protect a public interest'," Citing Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791 (1917). This court has applied the Merrill rule in numerous instances. See, e. g., Werner v. Dept. of Interior, 581 F.2d 168 (8th Cir. 1978); United States v. One 1973 Buick Riviera Auto., 560 F.2d 897, 899 (8th Cir. 1977); United States v. Crance, 341 F.2d 161, 166 (8th Cir. 1965).
 
 
 19
 We note that without defining "affirmative misconduct" the Hibi Court left open the question whether such misconduct might give rise to an estoppel against the government. 414 U.S. at 8, 94 S.Ct. 19, Citing Montana v. Kennedy, 366 U.S. 308, 314, 315, 81 S.Ct. 1336, 6 L.Ed.2d 313 (1961).
 
 
 20
 Mr. Leimbach testified that at one time in 1968 an Agency representative started to fill out a claim form for him; that he asked whether there was any use in filling out the form and that the representative said "no, not really." He replied then that there was no use in going further and left. Later on Leimbach conceded that perhaps some of the people to whom he talked either didn't know about eligibility of his children or made erroneous answers in response to his leading questions.
 
 
 21
 In the circumstances, we find nothing that would amount to affirmative misconduct or that would justify a departure from our previous decisions. It is apparent that at worst Mr. Leimbach was simply misinformed by Social Security employees concerning his children's eligibility. Such action on the part of Agency employees, although regrettable, will not give rise to an estoppel against the government.
 
 
 22
 Reversed.
 
 
 
 *
 The Honorable William C. Hanson, Senior District Judge, Southern District of Iowa, sitting by designation
 
 
 [1]
 An applicant is Eligible for benefits when all the requirements for entitlement are met but he has not yet applied. An applicant is Entitled to benefits when he has applied and proven his right to benefits. 42 U.S.C. § 402(d)(1)
 
 
 [2]
 Neither the Administrative Law Judge who originally reviewed the Leimbach application nor the district court made factual findings as to the precise nature of these oral inquiries. The Agency kept no written records of these conversations and Leimbach cannot recall the exact dates of his visits and telephone calls to the local office. Nor can he remember to whom he spoke. Thus it is doubtful whether the content of these inquiries can be reconstructed. In any event, Leimbach presented no evidence of intentional misconduct on the part of Agency employees; and since we determine that the Agency's written application requirement is valid and prevents Leimbach from relying on his purported oral inquiries, we assume that he accurately described the circumstances of his children's eligibility to Agency employees and simply received mistaken information from them
 
 
 [3]
 20 C.F.R. §§ 404.601(c) and (d) provide:
 (c) Application defined. Unless otherwise specified, the term "application" refers only to an application on a form prescribed in § 404.602 and includes an application for monthly benefits, a lump-sum death payment, the establishment of a period of disability, special age 72 payments, and entitlement to hospital insurance benefits.
 (d) Filing of application on prescribed form. Except as provided in §§ 401.611, 404.613, and 404.614, an individual has not "filed an application" for purposes of sections 202, 216(i), 223, 226, or 228 of the Act until an application on a form prescribed in § 404.602 has been filed in accordance with the provisions of this Subpart G.
 
 
 [4]
 20 C.F.R. § 404.613 provides in pertinent part that
 (b) Written statement filed by person on behalf of another. A written statement filed by a person that indicates an intention to claim on behalf of another person monthly benefits . . . is, unless otherwise indicated, considered to be the filing of an application for such purposes . . . .
 
 
 [5]
 42 U.S.C. § 405(a) provides:
 The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.