In re the Marriage of Willis D. CALI-COTT, Petitioner-Respondent,

v.

Iva Deanne CALICOTT,
Respondent-Appellant.

No. 13540.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 27, 1984.

Kay S. Graff, Springfield, for respondent-appellant.

Phillip A. Glades, Joplin, for petitioner-respondent.

MAUS, Judge.

Upon his Motion to Modify, the trial court reduced the respondent-husband's payment of maintenance from $1,450 to $850 per month. The basic contention of appellant-wife is that under the applicable law, the evidence does not support that modification. The pertinent evidence will be only briefly summarized.

The parties' marriage of 28 years duration was dissolved in a contested proceeding on March 24, 1981. See *Calicott v. Calicott*, 634 S.W.2d 570 (Mo.App.1982). Two of their three children had reached majority. The custody of a 19-year-old son was declared to be in the wife. She was awarded child support of $450 per month.

By the decree of dissolution, the wife was awarded maintenance of $1,000 per month. This maintenance was to be increased to $1,450 per month when the son in her custody attained 21 years of age or was emancipated. As a finding of fact, the dissolution court declared:

That this court in considering the amount of maintenance that respondent is entitled to has considered the factor that because of respondents [sic] educational background and her obvious intelligence that she is capable of securing gainful employment and thereby have additional income which would enable her to maintain the standard of living to which she was accustomed to during her marriage to petitioner.

Marital property in excess of $76,000 in value was divided substantially equally. The son became 21 on January 23, 1982.

At the time of the dissolution, the husband was a retired Lieutenant Colonel. In 1980, he drew a military pension of $22,776. The husband held several academic degrees, including a Masters in Business Administration. He was employed as an associate professor and/or director of computer services at Missouri Southern State College. In 1980, his salary was $20,300. He was paid additionally for teaching night courses. The dissolution court considered his total income to be approximately $43,000 per year.

The wife had a degree of Bachelor of Education of Business Education. However, during the marriage she had taught only sporadically. At the time of the dissolution, she worked as a secretary for the Southwest District Office of the Methodist Church on an "on-call basis." The extent of her employment was apparently not significant as at the dissolution she testified she was not employed.

On September 6, 1983, when the Motion to Modify was heard, the husband had taken a leave of absence from his position with the college. The college was instituting a bachelor's program in computer science and data processing. The husband took the leave of absence for the purpose of getting a doctorate degree. He was a tenured professor. He was not subject to discharge or a reduction in salary. He said he wanted to improve his skills so that he would not be relegated to teaching beginning courses and keep up with his peers.

At the time of the latter hearing, the gross amount of the husband's military pension was $31,884 per year. He had a job as a part-time instructor at the University of Texas at Arlington where he then lived and was going to attend school. His salary was estimated to be $6,000 to $7,200 per year. He had an investment income of $1,500 to $2,000 per year. He had cancelled a lease on a house in Abilene, Texas in order to place that house on the market. The house had rented for $500 per month.

At the time of the motion hearing, the wife was employed half days as a secretary for the District Office. She was employed the other half day as a secretary for the local Methodist Church. Her total gross earnings for both jobs was $680 per month. She testified she had been unable to obtain a job as a teacher even though she had made numerous applications. She presented evidence that her monthly expenses had increased from $1,600 at the time of the dissolution to $2,032 at the time of the motion hearing.

The trial court found the husband had a reduction in income since the decree of dissolution and the wife was gainfully employed and able to contribute to her own support. The husband contends there was evidence to support these findings of changed circumstances. Therefore, he concludes there was a basis for the modification.

■ It is not every change of circumstances that is a basis for modification. *Markham v. Markham*, 506 S.W.2d 84 (Mo. App.1974). Section 452.370 in part provides: "[A]ny decree respecting maintenance or support may be modified ... *only* upon a showing of changed circumstances *so substantial and continuing as to make the terms unreasonable.*" (Emphasis added). It has been declared "the legislature in enacting § 452.370 intended to require a stricter standard for modification of a decree of dissolution than was formerly required." *Seelig v. Seelig*, 540 S.W.2d 142, 147 (Mo.App.1976). The husband had "the burden of showing a change in circumstances so substantial as to make the terms of the original decree unreasonable." *In re Marriage of Carter*, 643 S.W.2d 280, 280 (Mo.App.1982).

■ It has been often observed that a decrease in income of the husband does not alone call for a reduction in maintenance for a wife. *Early v. Early*, 659 S.W.2d 321 (Mo.App.1983); *Van Luvan v. Van Luvan*, 577 S.W.2d 156 (Mo.App.1979). Of course, of prime importance is the amount of decrease in income. As stated, the dissolution court considered the husband's annual income to be $43,000. Accepting the husband's lowest estimate of his salary in Arlington and his investment income, those sources plus his pension provided an annual income in excess of $39,000.

■ Such a decrease must be considered with other relevant factors. *Seelig v. Seelig*, supra. One such factor is whether or not the decrease causes a husband to be unable to pay the maintenance. *Ziebell v. McClure*, 578 S.W.2d 66 (Mo.App.1979). The husband's estimate shows monthly expenses of $4,250, including the payment of maintenance of $1,450. However, that estimate is discounted by evidence that it overstates his monthly tuition, it includes non-reoccurring moving expense of $210 per month and it includes a payment of $225 on the house he has placed on the market. Also to be considered is the fact the estimate includes expenses for the wife he married on August 18, 1983. See *Markham v. Markham*, supra. Further, the husband's estimate of his income does not take into account the fact the maintenance

payments are fully deductible for his federal income tax purposes and fully taxable to the wife.

The husband's professed inability to pay maintenance must also be considered in the light of his statement concerning his willingness to financially help his son finish his educational program. The husband first said, "I have promised to help him as much as I can." This was followed by this question and answer:

Q. Did you in fact promise to help him should he quit helping his mother?

A. I told him that if he tied his finances to hers that I in fact could not help him because that would be increasing the support I was giving her and I did not intend to do that, yes.

It is relevant that commencing in July, 1983, the husband, without judicial sanction, reduced his monthly maintenance payment to $400 per month. On July 15, 1983, he had $4,177.80 in a bank account. See *Jackson v. Jackson*, 655 S.W.2d 787 (Mo. App.1983). The husband has not demonstrated his inability to pay the maintenance fixed by the dissolution court.

■ Another relevant factor is that by taking a leave of absence, the husband reduced his potential income by approximately $14,000 per year. This court does not deprecate the attainment of a doctorate degree. While the husband estimated that would take three to five years, it was not shown that his reduction in income was permanent. In similar circumstances, it has been held proper to consider a husband's past and present capacity to pay, as distinguished from his actual earnings. *Seelig v. Seelig*, supra. Also see *Jackson v. Jackson*, supra; *Foster v. Foster*, 537 S.W.2d 833 (Mo.App.1976); *Weiss v. Weiss*, 392 S.W.2d 646 (Mo.App.1965). Because of these relevant factors, the husband has not demonstrated his reduction in income was so substantial and continuing as to make the terms of the dissolution degree unreasonable.

■ Under the circumstances of this case, the reduction in maintenance cannot be sustained because the wife was em-

ployed. *Crews v. Crews*, 607 S.W.2d 709 (Mo.App.1980). In initially fixing maintenance, the dissolution court properly considered the parties' standard of living. *In re Marriage of Pitluck*, 616 S.W.2d 861 (Mo.App.1981). It has been logically and consistently held that an unemployed wife's employment is not a basis for the reduction of maintenance when her employment was contemplated in initially fixing that maintenance. *In re Marriage of Carter*, supra; *Davis v. Davis*, 620 S.W.2d 6 (Mo.App.1981); *Ziebell v. McClure*, supra. As noted, the dissolution court in fixing maintenance clearly stated it took into consideration the wife's future employment. It cannot be said the dissolution court considered she would be earning less than $680 per month. It is also important to observe that the wife's total income does not significantly exceed her listed expenses. *Early v. Early*, supra. There was no substantial evidence from which it could be concluded the husband ·carried the burden required by § 452.370. The judgment of the trial court is reversed. Judgment is entered denying the husband's Motion to Modify.

PREWITT, C.J., HOGAN, P.J., and CROW, J., concur.