STATE of Missouri, ex rel. DIVISION
OF FAMILY SERVICES,
Assignee-Appellant,

Karen Sue Ruble, Plaintiff-Appellant,

v.

Leonard William RUBLE,
Defendant-Respondent.

No. 48498.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 22, 1985.

Richard Mark Goldstein, Cape Girardeau, for appellant.

Leonard William Ruble, pro se.

PUDLOWSKI, Presiding Judge.

This is an appeal from a judgment of the Circuit Court of Washington County which sustained respondent's motion to quash garnishment in the amount of $27,247.00 for past due child support payments.

Appellant Karen Sue Ruble (Ruble) and respondent Leonard William Ruble were divorced on April 5, 1976. The parties executed a separation agreement and property settlement which was incorporated in the decree, and which ordered respondent to pay $25.00 child support per week for each of the parties' five children. On June 21, 1976, the parties signed a stipulation to reduce child support payments to $16.00 per child per week. On September 14, 1976, the parties executed a second stipulation reducing the support payments to $10.00 per child per week. Both stipulations were promptly filed with the circuit court, but no motions were made to amend the court order of $25.00 per child per week.

Ruble began receiving Aid to Dependent Children (ADC) benefits in June 1976. On July 6, 1977, she assigned her rights to accrued and future child support payments to the Division of Family Services (DFS) in behalf of the State of Missouri. In August 1977 the Child Support Enforcement Unit of DFS notified respondent that Ruble was receiving ADC benefits and had assigned her rights to child support to the State of Missouri. Based on the stipulations filed with the court, respondent was directed by DFS to pay $50.00 per week to it for the support of his children.

In February 1982 the Child Support Enforcement Unit (CSE) notified respondent that he was "not paying according to the court order." In November 1983 respondent was notified again by CSE that his past due child support amounted to $2,602.00, based on the September 14, 1976 stipulation. The letter also informed him that the original court order had not been modified, and future collection efforts would be based on the court order of $25.00 per week per child as of March 1983 when the CSE Unit became aware of the non-modification of the court decree.

The CSE Unit ordered an execution and garnishment of respondent's wages in the amount of $27,247.00 on January 30, 1984. This amount was based on the April 5, 1976 order of $25.00 per week per child. Respondent's motion to quash the garnishment was sustained by the circuit court. The court agreed with DFS that legally the stipulations did not change or modify the original court order, but found in equity that all of the parties, including DFS, had acted in accordance with the stipulations and that DFS had waited too long to act on the arrearage.

DFS argues that the circuit court erred in sustaining respondent's motion to quash the execution and garnishment because the stipulations between the parties did not modify the original support order and did not relieve respondent of his obligation to pay child support pursuant to that order.

■ We begin our analysis of this case with the premise that an award of child support pursuant to a divorce decree is for the benefit of the children. The paramount concern of the court in all child support cases is the needs of the children. The amount of support required and the ability of each parent to provide such support are questions which rest primarily within the trial court's determination. *Flynn v. Flynn*, 604 S.W.2d 785 (Mo.App.1980). The trial court retains jurisdiction to modify a child support award upon a showing of

a substantial change of circumstances which makes the existing terms unreasonable. *See* RSMo § 452.370.

■ It is well settled in Missouri that future child support obligations may not be altered by contract or agreement between the mother and father. Only a court has the power to alter future support payments. *Holt v. Holt,* 662 S.W.2d 578 (Mo. App.1983). Respondent's error was in not submitting the stipulations for approval to the circuit court. The court was never given the opportunity to exercise its jurisdiction to examine evidence of changed circumstances and to determine whether a modification of the original support decree in accordance with the stipulation was reasonable. The circuit court's determination that the stipulations did not have the legal effect of modifying the original decree is correct. We are urged to consider whether principles of equity demand a differing result.

The record before us reveals that the circuit court believed that the respondent was lulled into a false sense of security by the execution of the stipulations and the apparent acceptance of them by Ruble and DFS. A similar argument was raised in *DeMoranville v. Tetreault,* 654 S.W.2d 71 (Mo. banc 1983), where the issue was whether a father was entitled to have a child support judgment against him deemed satisfied pursuant to RSMo § 516.350. The Missouri Supreme Court noted in dicta that acquiescence has been applied as a bar only in rare instances where the parties have expressly agreed (citing *Rodgers v. Rodgers,* 505 S.W.2d 138 (Mo.App.1974), and laches has never had the application requested by the father. *DeMoranville, supra,* at 73.

■ The case at bar, like *Rodgers,* involves an express agreement as to the payment of future child support. Although the stipulations were legally unenforceable, they were evidence of Ruble's acquiescence to respondent's payment of the lesser amount. *Haynes v. Haynes,* 648 S.W.2d

895 (Mo.App.1983). Accordingly, we hold that the equitable principal of acquiescence to apply and the respondent was obligated to pay $16.00 per week per child from June 21, 1976 to September 13, 1976, and $10.00 per week per child from September 14, 1976 to July 5, 1977.

In reply to DFS's contention that respondent is liable from the date of the decree, respondent argues that when DFS acquired Ruble's right to child support, DFS also accepted Ruble's stipulations reducing the payments.

■ We find no evidence that DFS agreed to respondent's reduced payments after Ruble assigned her child support *rights* to the State. Although respondent was erroneously informed by an investigator of the CSE Unit to continue to pay $50.00 per week to the State, it is well established that a governmental agency is not estopped by misrepresentation by its agents. *Leimbach v. Califano,* 596 F.2d 300, 304 (1979).

■ The state received the assignment of Ruble's legal right to $25.00 per week per child pursuant to the divorce decree, and after the assignment it was entitled to collect from defendant the amount ordered in the decree. Section 454.415 RSMo.

While this result appears harsh, we bear in mind that it was the respondent's failure to have the trial court approve the stipulations that caused his burden. "It is apparent that at worst respondent was simply misinformed by an employee of DFS concerning his liability under the court decree. Such action on the part of DFS's employee, although regretable, will not give rise to an estoppel against the government." *Leimbach, supra* at 305.

Therefore, we hold that as of July 6, 1977, the date of the assignment to DFS, the respondent was obligated to pay $25.00 per week per child.

Reversed and remanded to the circuit court for determination of the support ar-

rearages due in conformance with this opinion.

GAERTNER and KAROHL, JJ., concur.