Betty Fay LIGHT,
Petitioner–Respondent–Cross–Appellant,

v.

Delbert D. LIGHT,
Respondent–Appellant.

Nos. 15239, 15242.

Missouri Court of Appeals,
Southern District,
Division Two.

June 29, 1988.

Motion for Rehearing and/or Transfer to
Denied and Overruled July 19, 1988.

C. Clifford Schwartz, Shaw, Howlett & Schwartz, Clayton, for respondent-appellant.

John D. Beger, Rolla, for petitioner-respondent-cross-appellant.

MAUS, Judge.

By his motion to modify, Delbert D. Light (husband) sought a reduction in monthly maintenance to his former wife Betty Fay Light (wife). By her cross-motion, the wife sought an increase in that maintenance. Following a hearing in April, 1987, the trial court denied both motions. Each party has appealed. The appeals have been consolidated. An outline of the basic facts follows.

The marriage of the parties was dissolved on April 12, 1983. The only child of the marriage, a daughter, was emancipated. The husband was 50 years old. He was employed as a sheet metal worker at McDonnell Douglas, where he had worked for 27 years. He earned $27,710.12 in 1983. His net weekly check was for $334. The wife was 46 years old. She had an eighth grade education and no special skills. She was unemployed. The husband was awarded proceeds from the sale of the cattle and hogs in the amount of $11,900, farm equipment valued at $3,475, hay valued at $5,000, cash assets of $6,380, a 1979 Oldsmobile and miscellaneous personal property valued at $320. The wife was awarded the home which was on a 40-acre tract in Maries County, household goods valued at $3,100, a savings account of $1,200 and a 1977 Chevrolet pickup truck. She was also awarded maintenance of $500 per month.

The husband remarried in July, 1983. He and his present wife live in Bridgeton, Missouri. The present wife's daughter and her grandson live with them. The husband is still employed at McDonnell Douglas. In 1985 he made approximately $31,000. He estimated that in 1986 he made $27,000. At the time of the hearing his net weekly check was for $354. His present wife is also employed at McDonnell Douglas. In 1986 she earned $36,000. The husband and his present wife maintain the daughter and her child.

In June, 1983, the wife left the farm to reside with her daughter and son-in-law and their two small children in Texas. The son-in-law was in the Navy. That same year the family group moved to Oak Harbor, Washington. The wife baby-sits with her grandchildren. From June, 1986, to February, 1987, she also worked two hours a day at a child day-care center serving lunches. She made $4.56 per hour. In Washington she became acquainted with one Dale Campbell. She spends some time with Dale Campbell. She denied they were married or that he supported her. He did accompany and stay with her on a trip to Maries County to get her furniture.

In 1986, the husband was diagnosed as having Parkinson's disease. He takes four medications daily. He sees his physician each month and a specialist three or four times per year. He suffers from shaking, body rigidity, difficulty in walking and other symptoms associated with Parkinson's disease. At the time of the hearing, he had progressed to stage III of the disease, which is categorized as having five stages. He estimated that in 1986 he missed one-third of the work days, although he was paid for those days. He said co-workers cover for his employment handicaps. He could retire on medical benefits of up to $800 per month. He would like to retire, but because of the payment of maintenance he cannot. When asked if he could work, the husband replied, "I wouldn't say I'm able to, but I have to." He stated that he expected to work for the foreseeable future, "until I can get this straightened up, if I'm able to get in."

As stated, at the time of the hearing the wife was living with her daughter and son-in-law in Washington. The son-in-law was still in the Navy and Betty Fay Light is carried as his dependent. She shops in the Navy commissary and the Navy pays for medical expenses and some of her medicine. The son-in-law does not intend to reenlist in the Navy. Her privileges were expected to terminate in September, 1987. The wife testified that since the dissolution her physical condition had deteriorated. The Missouri doctor who was the wife's physician from 1976 to 1983 examined her in March, 1987. His testimony was to the

following effect. In 1983 the former wife suffered from bipolar depression, diabetes and seronegative rheumatoid arthritis. Her arthritis now affects multiple joints. Her condition in 1987 was worse than it was in 1983. She has also developed deltoid bursitis and polycystic breast disease. In his opinion the wife is permanently disabled and not able to be employed.

The fundamental legal principles determinative of these appeals are well established. "It is not every change of circumstances that is a basis for a modification." *Calicott v. Calicott,* 677 S.W.2d 953 (Mo. App.1984). "[A]ny decree respecting maintenance or support may be modified ... only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." § 452.370.1, RSMo 1986. "[T]he legislature in enacting § 452.370 intended to require a stricter standard for modification of a decree of dissolution than was formerly required." *Seelig v. Seelig,* 540 S.W.2d 142, 147 (Mo.App.1976). The burden of demonstrating a substantial change that requires modification is upon the movant. *Bunch v. Bunch,* 746 S.W.2d 634 (Mo.App. 1988). The credibility of the witnesses and reasonable inferences to be drawn from the evidence is within the province of the trial court. *Wood v. Wood,* 709 S.W.2d 143 (Mo.App.1986). Appellate review of the decision by the trial court is under the standard set forth in *Murphy v. Carron,* 536 S.W.2d 30 (Mo.banc 1976).

■ The husband's first point is that the trial court erred "by deciding the main issue before considering the medical evidence of the ability of the spouse by whom maintenance was being paid to meet his needs." He adds, "[t]rial court should have read the medical depositions of the attending physicians showing appellant to be in stage III of Parkinson's disease before reaching a decision." At the hearing, the husband testified at length concerning his affliction with Parkinson's disease. He described in detail his symptoms and the limitations they imposed upon his activities. He also introduced, without reading to the court, two medical depositions which estab-

lish the husband has Parkinson's disease, discuss the symptoms of that disease and its progression, the husband's current condition and give a prognosis of his future condition.

At the conclusion of the testimony, the trial court made some comments upon the issues. These included a preliminary observation that the trial court could not reduce maintenance because the husband was still working and made the same amount of money he did in 1983. The trial court stated it believed it should act only on what had happened and not on what may happen in the future. However, the trial court also made two things very clear. He stated "probably what the order of the Court's going to be" and that he wanted the parties to know the reasons for that order. Second, he indicated that his conclusion was tentative and that the court would read and consider the medical depositions before entering final judgment.

Taken in context, the remarks of the trial court demonstrate a thorough consideration of the testimony. They also show thoughtful concern that the parties understand that the probable decision would be based upon a legal principle and not a whim. The husband's implied assertion the trial court did not read the medical depositions before reaching a final decision is without support. His first point is without merit.

The first point as stated in appellant's brief requires no further consideration. However, in the interest of the parties, it is appropriate to consider the husband's argument that the trial court erred in not reducing maintenance because of the prognosis of the husband's physical condition.

The underlying limitation upon the trial court is statutory. "[T]he provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of *changed* circumstances so substantial and continuing as to make the terms unreasonable." § 452.370.1 (emphasis added). The statute does not bar the court from taking cognizance of all anticipated future

events. However, the rule generally applied has been summarized as follows.

The courts will not ordinarily modify a decree for alimony or maintenance on the ground that it is expected that the circumstances will change in the future. Even though the applicant believes that the prospective change is certain to occur he should ordinarily wait until it has actually occurred before applying for relief.

Annot., Modification of Alimony Decree, 18 A.L.R.2d 10, 22 (1951). That rule is recognized in this state. *Crowell v. Crowell*, 742 S.W.2d 244 (Mo.App.1987); *Berman v. Berman*, 701 S.W.2d 781 (Mo.App.1985).

That principle was applied in *Lampert v. Lampert*, 388 N.W.2d 899 (S.D.1986), a case involving a factual situation similar to the circumstances of the husband. In *Lampert*, the physician husband had contracted multiple sclerosis. He had reduced his working hours and his income had been reduced 41%. Nevertheless, the court denied his motion to reduce maintenance. In doing so, the court stated:

We do not ignore the fact that husband has MS, and as a consequence thereof, has reduced his working hours under doctors orders. However, the record shows that he is still functioning as a competent family physician. Although husband contends that he will suffer a complete loss of income due to his total disability from MS, this evidence is speculative given the nature of his illness. As we noted in *Guindon v. Guindon*, 256 N.W.2d 894, 899 (S.D.1977) '... respondent makes dire predictions of the future decrease in his income. If his income should decrease and/or the appellant's income increase, he may petition the trial court for a modification under such a change of circumstances.' So too if the present alimony award becomes so totally disparate with husband's future income, which may be reduced dramatically because of his illness, then he may petition the trial court for a modification.

*Lampert*, 388 N.W.2d at 903.

In this case the specialist treating the husband was asked the following questions and gave the following answers:

Q. In any case, Doctor, is it fair to say that you cannot say to a reasonable degree of medical certainty how much longer this man has to work at his employment?

A. That's correct.

Q. Okay. And, as far as you know now, the man is continuing to work at his employment?

A. That is correct.

The other physician treating the husband testified to the same effect. The trial court did not abuse its discretion in refusing to reduce maintenance because the husband was suffering from Parkinson's disease.

The husband's second point is that the trial court erred in refusing to hear evidence on the husband's ability to perform his job duties. That point has the following background. In response to a question on direct examination, the husband testified that co-workers covered for him by doing part of his work. At this point the wife was permitted to "voir dire" the husband for the purpose of making an objection. The wife established the husband had not been given notice of termination and expected to go to work the day following the hearing. The wife then, on the basis of irrelevancy, objected to a line of questioning concerning whether or not the husband could work. The objection was sustained. Whether or not this was error is not before this court. The husband made no offer of proof. "If no offer of proof is made, any error in exclusion of evidence is not preserved." *Dunkin v. Reagon*, 710 S.W.2d 498, 499–500 (Mo.App. 1986). The point is denied.

■ The husband's third point is that the trial court erred in finding the wife has an "equally serious medical problem" as the husband and in not considering the wife has full-time employment. This point is first based upon the husband's conclusion the testimony of the wife's physician that she was unemployable is not credible. It was the province of the trial court to determine the credibility of the witnesses. It obviously accepted the testimony of that physician as credible and the husband's first conclusion is unfounded. The point is

also based upon a conclusion that live-in baby-sitting with grandchildren in exchange for room and board is tantamount to full-time employment. For obvious reasons, the trial court was not required to accept this proposition. The point is denied.

◼ The husband's fourth point is that the trial court erred because the evidence established the wife failed to properly utilize the 40–acre tract. He argues this is established by the following. The wife left the home and placed it in the care of her father. In exchange she permits him to keep the hay rental. She also permits a man to live in the house without paying rent. The husband also emphasizes the fact the wife did not sell the tract for $30,000. This argument does not establish the trial court erred. The court was entitled to reject the husband's testimony the tract would produce each year hay valued at $6,400. It could accept the evidence that the hay was worth no more than $600 per year. It could also consider it reasonable that the wife found it depressing to live in what had been the family home in a rural area. The property was valued at $40,000 in the dissolution proceeding. She originally put it on the market for $49,000, but reduced the price to $39,000. There was no evidence to establish that her rejection of the offer of $30,000 was unreasonable. Moreover, the trial court could find that under the circumstances, the arrangements she made for care of the property were reasonable. The point has no merit.

◼ The husband's last point is that the trial court improperly awarded the wife attorney's fees in the amount of $2,200. The award of attorney's fees is within the discretion of the trial court. *Kieffer v. Kieffer*, 590 S.W.2d 915 (Mo. banc 1979); *Lyles v. Lyles*, 710 S.W.2d 440 (Mo.App. 1986). Considering all relevant factors, including the financial resources of the husband, the trial court did not abuse its discretion in awarding attorney's fees to the wife. *Cigno v. Cigno*, 723 S.W.2d 930 (Mo. App.1987). The point has no merit. The husband's appeal is denied.

◼ The wife's sole point on her cross-appeal is that the trial court erred in not awarding her increased maintenance because of increased expenses due to deteriorating health and the husband's increased disposable income. She argues her health will require increased expenses because in the near future the Navy will not pay any of those expenses. By selection of income and expense figures she argues the husband has approximately $800 per month additional disposable income.

The foregoing discussion demonstrates the wife's anticipation of the loss of medical protection by the Navy that she did not have at the time of the dissolution is not a "changed circumstance" that requires such an increase. Further, an increased income of the husband, by itself, does not warrant an increase in maintenance. *Mitchell v. Mitchell*, 610 S.W.2d 390 (Mo.App.1980). The trial court did not err in finding the wife did not carry her burden of proving maintenance of $500 per month was unreasonable because of changed circumstances. The wife's appeal is denied. The judgment of the trial court is affirmed.

PREWITT, P.J., and HOGAN and FLANIGAN, JJ., concur.