Lucille Fern SANDERS, Respondent–Respondent,

v.

Billie Lee SANDERS, Petitioner–Appellant.

No. 16828.

Missouri Court of Appeals, Southern District, Division One.

Oct. 24, 1990.

Jerry L. Holcomb, Collins, Webster & Rouse, P.C., Joplin, for respondent-respondent.

Andrew Wood, Douglas, Douglas & Johnson, Neosho, for petitioner-appellant.

MAUS, Judge.

Billie Lee Sanders (husband) filed a motion to modify a previously modified decree of maintenance by terminating maintenance of $450.00 per month to Lucille Fern Sanders (wife). Husband also filed a motion to quash a garnishment to collect delinquent installments of maintenance. The parties and trial court considered those motions consolidated and to constitute one proceeding for hearing and disposition. The parties so regard the husband's appeal from the trial court's denial of both motions. This court will so consider that appeal.

■ Husband contends the court erred in denying his motion to terminate maintenance for the reasons stated in three subpoints. Relevant principles applicable in determining the merit of that contention include the following. Modification of a decree granting maintenance is governed by statute. Such a decree may be modified upon a showing of changed circumstances, but "[n]ot every change of circumstance will justify modification of a dissolution decree." *Mendelsohn v. Mendelsohn*, 787 S.W.2d 321, 323 (Mo.App.1990); *In re Marriage of Bell*, 720 S.W.2d 33, 34 (Mo.App. 1986). The change in circumstances must be so substantial and continuing that the terms of the prior decree have become unreasonable. § 452.370.1. "The statutory standard for modification is intended to be strict so as to discourage recurrent and insubstantial motions for modification."

*Dow v. Dow*, 728 S.W.2d 714, 716 (Mo.App. 1987); *Magaletta v. Magaletta*, 691 S.W.2d 457, 458 (Mo.App.1985). Appellate review of the trial court's decision is governed by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Mendelsohn*, supra. That standard is to be applied recognizing the credibility of the witnesses and the inferences to be drawn from the evidence are for the trial court, as it is in the best position to make such decisions. *Morovitz v. Morovitz*, 778 S.W.2d 369 (Mo.App.1989), cert. denied — U.S. ——, 110 S.Ct. 1822, 108 L.Ed.2d 952 (1990); *Light v. Light*, 753 S.W.2d 628 (Mo. App.1988); *Early v. Early*, 659 S.W.2d 321 (Mo.App.1983).

The following is an outline of the basic facts pertaining to the motion to modify. The parties were divorced on January 18, 1973. Bill was awarded custody of their son Greg, age 19. Lucille was awarded custody of their daughter Lea, age 17. Lucille was also awarded $175.00 per month child support and $350.00 per month maintenance. At the time of the original decree, Bill was employed at Tri–State Motor Transit, Inc. Lucille was not employed.

Husband filed a motion to modify maintenance in December of 1978. The motion was denied. Wife's counter motion to modify was sustained by increasing maintenance to $450.00 per month. At the time of the modification in 1978, husband's earnings had increased to $36,000.00 per year at Tri–State. He married Linda in 1974. Upon the hearing of that motion, wife Linda was earning $18,000.00 per year as a teacher in Joplin. Lucille was not employed.

In May 1984, husband left his employment with Tri–State. He and Linda moved to Georgia where he was employed as administrative vice president of McGill Specialized Carriers, Inc. His employment with that company was terminated in May 1987 because of a disagreement with the owner of the company. At the time of that termination, his salary was $65,000.00.

In anticipation of the purchase of a business, husband and Linda moved to Bowling

Green, Kentucky. The purchase did not materialize. In February 1989, wife caused a garnishment to be issued against husband to collect delinquent installments of maintenance under the 1978 modification. In March 1989, husband filed the motion to terminate maintenance which generated this appeal.

The motion was heard December 22, 1989. At that time, husband was unemployed. Husband had unsuccessfully sought employment in the data processing field by sending resumes to 300–400 prospective employers. He was 63 years old. In 1979 he had triple by-pass surgery. He had orthopedic problems and emphysema. He had a gross monthly income of $712.00 social security and $922.50 Navy retirement. Linda had an annual income of approximately $18,000.00 from a trust established by her father. The record does not show whether or not Linda had been employed since leaving Joplin. Husband listed their expenses at $3,300.00 per month.

Since the 1978 modification, the wife had been briefly employed at Wal–Mart and doing housekeeping work. She had some secretarial training but had not sought secretarial work. She was 59 years old. She had no income. She had suffered a back injury and had degenerative arthritis which caused crippling in her hands. In 1988 she had surgery for breast cancer. She testified that she was unable to work. She listed expenses of $708.00 per month which included medical expenses of $135.00 per month. Her actual medical expenses for the year preceding the hearing exceeded $3,000.00.

 Husband's first subpoint is that the trial court erred because he "had become permanently unemployed and had experienced a dramatic decrease in his income". He argues these changes of circumstances cause the judgment to be against the weight of the evidence. Of course, unemployment and a reduction in income can provide a basis for modifying a decree of maintenance. *Dow v. Dow,* supra; *Katz v. Katz,* 759 S.W.2d 857 (Mo. App.1988). Every reduction in income, however, does not establish that the terms of the prior decree have become unreasonable, § 452.370.1, and justify a modification of that decree. *Mendelsohn,* supra; *In re Marriage of Bell,* supra. The trial court could consider that since May of 1987 husband had received an employment termination settlement of $45,704.00, unemployment benefits of $4,000.00, sold stock for approximately $13,000.00 and cashed an IRA of approximately $13,000.00. The trial court was required to consider the extent to which his reasonable expenses should be shared by Linda. § 452.370.1. *McAvinew v. McAvinew,* 733 S.W.2d 816 (Mo.App. 1987). Also relevant are the facts husband and Linda lived in a home valued at $150,-000.00 in which they had equity of $50,-000.00 and drove a 1988 Lincoln and a 1986 Cadillac. "Where, as here, a great disparity exists between the yearly income of the parties ... and the evidence discloses that Husband can meet his own financial needs while continuing to meet his support obligation, modification is unwarranted." *Mendelsohn* at 324. The trial court did not err in determining the husband's changed circumstances did not cause the husband's payment of maintenance of $450.00 per month to be unreasonable. See *Hughes v. Hughes,* 761 S.W.2d 274 (Mo.App.1988).

 Husband's second subpoint is that the trial court erred in not terminating maintenance because wife "made no effort to become self-sufficient." To support this point, he cites testimony that the wife sought only two jobs since 1978 and got both of them. He refers to the job at Wal–Mart and the job of housekeeping. He also cites her secretarial training. Recognizing the wife was obligated to make a reasonable effort to support herself, *Oldfield v. Oldfield,* 767 S.W.2d 134 (Mo.App.1989), the trial court obviously determined wife was in fact physically unable to work at a job within her skills. Therefore, the fact the wife did not work does not provide a basis for modification by ter-

mination of maintenance. Nevertheless, the husband argues that, even assuming she is physically disabled, he should not be required to insure the wife against every injury or disability that occurred after the divorce. The argument has no merit. The circumstance that the wife's need was continued by accident or misfortune subsequent to the prior decree does not support his desire to terminate maintenance to the wife who is unemployable. Cf. *Mendelsohn*, supra.

■ Husband's third subpoint is that maintenance should be terminated because the wife testified she should have maintenance as "some kind of retirement pay" as the husband was receiving retirement pay. His retirement pay resulted from 20 years of service in the Navy. He argues it is against public policy to "give a spouse receiving maintenance a lifetime annuity." The wife was married to the husband for 14 of the 20 years that resulted in the husband's Navy pension. It is not necessary to discuss how the pension would have been distributed as marital property had the parties' marriage been dissolved after January 1, 1974. See *Harper v. Harper*, 764 S.W.2d 480 (Mo.App.1989). The wife's self-justification for accepting maintenance does not establish a change in circumstances that makes the husband's payment of maintenance unreasonable. The trial court's determination that the husband had not proved such a change in circumstances is supported by the evidence. The husband's point asserting error in the denial of his motion to terminate maintenance is denied.

The husband's second point is that the trial court erred in not quashing the garnishment for delinquent installments of maintenance. To support that point, he relies upon the following facts. In July 1987, the wife returned the husband's check for that month's payment of maintenance. A letter of enclosure included the following explanation: "Greg told me last month that you wouldn't be sending me anymore checks so I went to Social Securi-ty and applied for a disability. They told me if I got any more checks from you that they would close the case. I don't want them to do that because I need more medical help than what I am getting." Greg is the parties' son. After writing the letter, the wife received $1,900.00 in SSI benefits. The husband paid no further maintenance. In January 1989, the wife's attorney wrote the husband and demanded payment of maintenance. The husband did not respond and the garnishment for the past-due installments of maintenance was issued.

■ By the allegations of his motion and his point and argument in his brief, "Bill is relying on the Doctrine of Waiver by Acquiescence to quash Lucille's garnishment for sums allegedly due and owing from July, 1987 to February, 1989".

"Self-help" modifications of judicially decreed obligations of a spouse to pay future installments of child support or maintenance involve several impinging legal doctrines. See Annot., Laches or Acquiescence as Defense, so as to bar Recovery of Arrearages of Permanent Alimony or Child Support, 5 A.L.R.4th 1015 (1981). At least in part, this may account for a variegated pattern of decisions on the subject. Cf. *Saeuberlich v. Saeuberlich*, 773 S.W.2d 170 (Mo.App.1989); *State v. Thurwalker*, 766 S.W.2d 483 (Mo.App.1989); *Newport v. Newport*, 759 S.W.2d 630 (Mo.App.1988); *Sagos v. Sagos*, 729 S.W.2d 76 (Mo.App. 1987). In general, "[t]here can be no accord and satisfaction of a judgment which will accrue in the future." *Grommet v. Grommet*, 714 S.W.2d 747, 749 (Mo.App. 1986). The doctrine of waiver by acquiescence asserted by the husband has been recognized in limited factual circumstances. *State ex rel. Division of Family Services v. Ruble*, 684 S.W.2d 949 (Mo.App.1985). However, attempts to sustain self-help modifications on that basis are most often rejected.

"With foreseeable frequency waiver by acquiescence has been asserted by delinquent fathers and ex-husbands as a defense to proceedings seeking enforce-

ment of judicial decrees. However, this assertion met with little success in the appellate courts. Finding either a lack of evidence of an agreement, express or implied, to accept lesser payments than judicially ordered or a lack of evidence of acquiescence therein, the defense was rejected in such cases as *Vincent v. Vincent,* 584 S.W.2d 152 (Mo.App.1979), *Penney v. White,* 594 S.W.2d 632 (Mo.App. 1980), *Tudor v. Tudor,* 617 S.W.2d 610 (Mo.App.1981), *Buttrey v. Buttrey,* 622 S.W.2d 708 (Mo.App.1981), *Wedel v. Wedel,* 624 S.W.2d 869 (Mo.App.1981), *Holt v. Holt,* 662 S.W.2d 578 (Mo.App.1983) and *Loveland v. Henry,* 700 S.W.2d 846 (Mo. App.1985)." *Grommet* at 750.

The Supreme Court has observed "acquiescence has been applied as a bar only in a rare instance where the parties have expressly agreed...." *DeMoranville v. Tetreault,* 654 S.W.2d 71, 73 (Mo. banc 1983).

For a number of reasons, the doctrine of waiver by acquiescence does not aid the husband. The trial court could logically find that the wife's letter was not an express agreement to terminate maintenance, but apparent submission to the husband's unilateral statement that he would not send any more checks. Her subsequent efforts to obtain disability payments were only to avoid being destitute.

It is important to note that, when found to be applicable, the doctrine of waiver by acquiescence has been based upon the acceptance of lesser amounts rather than the total termination of child support or maintenance. Annot., supra.

The husband's contention that the wife received consideration for the termination of maintenance in the form of the $1,900.00 disability payments, is without foundation. Consideration must pass between the parties. The $1,900.00 was paid by the government and not the husband.

Nor is the husband aided by his testimony that he would have filed a motion to terminate had it not been for the letter. "Accordingly, respondent's forbearance from filing a motion to modify the terms of the dissolution decree, rather than being a legal consideration for appellant's acceptance of partial maintenance payments, is no more than an evasion of statutory requirements." *Grommet* at 752.

In summary, the evidence does not present the equitable considerations necessary for the proper application of the doctrine of waiver by acquiescence. The trial court did not err in overruling the motion to quash. The judgment is affirmed.

PREWITT and CROW, JJ., concur.