Willie May RODGERS (Busse) etc.,
Plaintiff-Appellant,

v.

Connie RODGERS, Defendant-Appellant.

No. 35087.

Missouri Court of Appeals,
St. Louis District,
Division One.

Jan. 22, 1974.

William D. Kimme, Washington, for plaintiff-appellant.

Hansen, Stierberger & Hartley, Daryl K. Hartley, Union, for defendant-respondent.

KELLY, Justice.

This is an appeal from a judgment of the Circuit Court of Franklin County, Missouri, wherein the trial court denied plain-

tiff's motion to modify the child support and maintenance award decreed on April 26, 1957, when the plaintiff was granted a divorce from the defendant,[1] and also sustained defendant's motion to quash a writ of sequestration attaching defendant's pay as a deputy sheriff of Franklin County, Missouri, to satisfy a debt of $6,600.00 allegedly due plaintiff for unpaid child support and maintenance.

Plaintiff contends that the trial court erred in the following respects: 1) in sustaining defendant's motion to quash the writ of sequestration; 2) in denying plaintiff's motion to modify the divorce decree and increasing the child support and maintenance awards decreed in the divorce decree of April 26, 1957; and 3) in making inconsistent rulings with respect to 1) and 2).

We hold that the trial court did not err as charged by the plaintiff, and therefore affirm.

■ In reviewing the decision of the trial court in a proceeding to modify the divorce decree with respect to child support payments, the court of appeals is required to review the case upon both the law and the evidence as in suits of an equitable nature, and the trial court's determination will not be set aside unless it clearly appears there has been an abuse of discretion. Toth v. Toth, 483 S.W.2d 417, 423 [10] (Mo.App.1972); Bagley v. Bagley, 460 S.W.2d 736, 737 (Mo.App.1970); Brosam v. Brosam, 437 S.W.2d 694, 697 [4] (Mo.App.1969), Rule 73.01(d) V.A.M. R. The same is true with respect to defendant's motion to quash the writ of sequestration. Rule 73.01(d). We should defer to the trial court's findings on factual issues unless they are in conflict with the preponderance of the evidence and disclose a manifest abuse of discretion. Pelts v. Pelts, 425 S.W.2d 269, 270 [4] (Mo. App.1968).

The trial court was not requested by the parties to make any findings of fact or conclusions of law and except for stating in the "Judgment" that it found "that the allegations in the defendant's motion to Quash Writ of Sequestration issued on April 26, 1972, to be true" and that "the allegations in the plaintiff's Motion to Modify Divorce Decree is without merit" we are not more fully advised in these respects. We proceed therefore to make a determination whether, under the evidence and the reasonable inferences therefrom, the judgment of the trial court was in conflict with the preponderance of the evidence and disclosed a manifest abuse of discretion. Pelts v. Pelts, supra.

We have concluded from the evidence that the trial court could have found that plaintiff was granted a divorce from the defendant on April 26, 1957, and that as a part of that decree custody of the two minor children of the marriage was awarded to the plaintiff. Defendant was ordered to pay to plaintiff as child support and maintenance the sum of $10.00 per week per child—a total of $20.00 per week—and was allowed reasonable visitation rights with the boys. At the time of the divorce the children were 3½ years and 28 months of age. That subsequently the parties could not agree what constituted "reasonable rights of visitation" so that on December 3, 1965, the divorce decree of April 26, 1957, was modified by the court which had granted the decree specifying that the defendant was to have the two children visit with him on the first and third weeks of each month from 5 p. m. on Friday until 7 p. m. on Saturday and from December 27 to December 30 of each year, and from July 15 to August 1 of each year. That thereafter the defendant continued having difficulty exercising his rights of visitation with the children and on at least two occasions the boys fled from his custody. That between December 15, 1965 and January 25, 1966, the defendant received four let-

1. The parties shall hereinafter be referred to in the position they occupied in the trial court.

ters from the children—two written by the elder child, one by the younger and one by both—wherein he was advised that they did not want to see him at any time, that they hated him, and that if he really wanted to see them happy he would not attempt to see them. In March, 1966, when defendant went to pick up the boys at plaintiff's home, plaintiff came out to defendant's car and informed defendant that the boys did not want to go with him; that she did not want him around her or the boys; that she didn't need his money; that she and her husband made $20,000.00 a year and that defendant was to "keep my damn money and stay away from them and stay out of their life." Defendant left without the children and had not seen them again until the date of the court hearing on December 19, 1972.

After the March, 1966, incident, the defendant continued making the payments for child support and maintenance in obedience to the divorce decree until sometime in May, 1966, when, on advice of counsel, he set up a "trust fund" for the boys and paid the support payments into this account every two weeks. On February 25, 1967, defendant while in line of duty as a police officer of the St. Louis Police Department was critically wounded and was hospitalized for 280 days in that year. At no time during his hospitalization did the two boys visit him nor inquire about him. His first period of hospitalization was between February 25 and July 8, 1967.

While defendant was still hospitalized from his wounds, on May 17, 1967, Mr. Thomas J. Briegel, an attorney, wrote to Mr. Arthur Friedman, the defendant's counsel, enclosing "Consent to Adoption" forms whereby the defendant would consent to the adoption of the two boys by plaintiff's husband, Thomas Busse, and asked Mr. Friedman to advise him of defendant's feelings in the matter, and if he agreed, to have him "execute the enclosed Consents." On June 13, 1967, Mr. Briegel again wrote to Mr. Friedman and stated that since he had not received a reply to

his letter of May 17, 1967, he would appreciate it if Mr. Friedman would advise him if the defendant was willing to sign the forms. Upon receipt of this letter Mr. Friedman telephoned Mr. Briegel and advised him that he had not been able to confer with the defendant because of his hospitalization, but during this telephone conversation Mr. Friedman mentioned the possibility of the plaintiff releasing the defendant of all claims for past due as well as future child support for the two children in consideration of the defendant executing the consents. This was followed by a letter from Mr. Briegel to Mr. Friedman dated June 26, 1967, wherein Mr. Briegel enclosed an unexecuted copy of a Release which he stated he had mailed to Mr. and Mrs. Busse, and that, "By way of information" it was his understanding that plaintiff intended to permit her children to be adopted by her husband, Mr. Busse, and in consideration of the consent of the defendant to the adoption, "any and all child support payments which have accrued will be acknowledged as satisfied and Mrs. Busse will no longer look to Mr. Rodgers for any child support, court costs, attorney fees or any medical bills, etc. which may have accrued through the years."

On July 8, 1967, the defendant executed the consent forms in Mr. Friedman's office and on July 17, 1967, Mr. Friedman wrote to Mr. Briegel advising him that he had met with the defendant who had agreed to the adoption of the boys by Mr. Busse and that he, Mr. Friedman, had in his possession signed consent forms which he was going to hold until he had received the release executed by the Busses. On September 25, 1967, Mr. Friedman wrote to Mr. Briegel inquiring what the current status of the case was, and on September 27, 1967, Mr. Briegel replied in a letter apologizing for the delay and advising him that "I don't know what in the hell is going on. Mr. and Mrs. Busse have not signed the releases as yet and apparently are contemplating this. They expressed reluctance that I mail the release prior to my having the consents in my possession." Mr. Briegel

suggested that if the defendant was willing, Mr. Friedman could mail the executed consent forms to him so that when he had them in his hands the Busses might sign the releases, and that he would make it clear to all parties that should he have the consents in his possession they would not be released until he had the executed releases in his hands. Thereafter, on November 7, 1967, Mr. Friedman forwarded to Mr. Briegel the notarized copies of "Consent to Adoption" forms executed by defendant on July 8, 1967, and requested that signed Release forms acknowledging full satisfaction of all child support claims to date be forwarded to him "prior to your filing or makin public the enclosed Consent to Adoption forms."

In the interim—the date is not established, but according to Mr. Briegel it was prior to the letter of November 7, 1967, from Mr. Friedman enclosing the executed consents, was received by him—the Busses came to Mr. Briegel's office and advised him that the proposed adoptions were going to be abandoned because the boys had said that they didn't want their names changed since they were already in school, had friends, and they would find it embarrassing to go up and say, "Well, my name is Busse, now, instead of 'Rodgers.'" Neither the Busses nor Mr. Briegel advised defendant nor Mr. Friedman of this change in plans, and even after Mr. Briegel had received the executed "Consents to Adoption," and, on or about the 10th day of November, 1967, had advised the Busses that he had them in his possession, was this information conveyed to either the defendant or Mr. Friedman.

The trust fund which the defendant had established for the boys after he terminated support payments to plaintiff in May, 1966, was liquidated by the defendant after he executed the consent forms on July 8, 1967, because he ran out of other funds after he was shot and after his house had been damaged by a tornado.

In January, 1971, the defendant received a letter from Mr. Briegel dated January 7, 1971, advising him that although he was in arrears in child support payments amounting to $6,000.00 and Mrs. Busse had not really bothered him about it, that now, since the boys wanted to go to college, the oldest boy wanting to attend Rolla School of Mines the following September, he had discussed this matter with the plaintiff and was quite certain that the defendant would not be able to pay the full arrears and continue the weekly payments in accordance with the court order. He asked defendant to give this some thought and let him know what he thought he could do within his means to resolve the problem. Defendant sent this letter to his counsel, Mr. Friedman, who in turn wrote to Mr. Briegel and informed him that their agreement was that plaintiff would waive all claims to past child support payments due and owing and future payments as well; that since he had forwarded the executed "Consents to Adoption" to him and had heard nothing from him thereafter, he assumed that their agreement was in effect. Mr. Friedman then asked Mr. Briegel to communicate his thoughts to Mr Friedman concerning the case. Mr. Briegel replied by letter on January 18, 1971, stating that he had completely forgotten their previous correspondence relative to the adoption of the defendant's children, but that this apparently had fallen through and the Busses had decided not to go through with the adoption. He further said that he was of the opinion that they would be in a position to negotiate the claim on terms "amicable" to defendant. On April 20, 1971, Mr. Briegel wrote to Mr. Friedman and advised him that plaintiff was insisting that execution be issued for the amount due and that if defendant did not come up with a compatible solution by May 1, 1971, he would then request execution.

On March 6, 1972, plaintiff filed a Motion to Modify Divorce Decree alleging that she and her husband were no longer able to provide for all of the needs of the two children from the award made in the original divorce decree, and that circum-

stances have changed to the point that the two children require a larger amount of support to meet their needs than was required in 1957, and that the defendant, through pension funds and earnings received from his present employment, was capable of providing additional support for the children.

On April 26, 1972, plaintiff filed a petition for writ of sequestration seeking attachment of defendant's pay as a deputy sheriff in satisfaction of $6,600.00 allegedly due as past-due child support payments. The writ was issued on the same date and was returned executed on the following day, April 27, 1972.

On May 1, 1972, the defendant filed a motion to quash the writ of sequestration on the grounds that he had, at plaintiff's request, stopped making any support payments and did not exercise his rights of visitation with the children, and further, that by his execution of the "Consents to Adoption" on July 8, 1967, plaintiff was barred by her agreement to release him from support payments from recovering any of the back due support money.

On June 9, 1972, defendant filed his "Answer to Plaintiff's Motion to Modify Decree," realleging the same grounds he had alleged in his motion to quash and denying his ability to furnish additional support.

The evidence further supports a finding by the trial court that at the date of the hearing, to-wit: December 19, 1972—the defendant was employed as a deputy sheriff in Franklin County, Missouri, and that he received a net monthly wage of $261.00 in that employment. That in addition to the foregoing he was receiving a disability pension of $487.00 per month from the St. Louis Police Department. That his employment as a deputy sheriff would terminate on December 31, 1972, because of his disability, and that he had no immediate prospects of employment at that time. His wife was earning $295.00 per month at that time and their monthly living expenses of

$1,062.00 exceeded their combined monthly income. That the elder son, who was 19 years old, was in his second year at a junior college and desired to attend the University; that the younger son, who was to be 18 years old on the 20th of December, 1972, was in his third year in high school. According to plaintiff the estimated financial needs of the two boys was $115.00 for the younger and $201.00 for the elder, monthly. The elder son was employed part time earning approximately $100.00 per month take home pay. Deducting that amount from the total necessary for both boys, the plaintiff calculated that she had a monthly deficit of $215.00 in meeting the necessaries for the two boys. She was earning a net salary of $238.00 per month for the support of the boys, her present husband, who was disabled, and their small daughter. Her present husband had earned $12,000.00 per year until he fell victim to a heart attack in August, 1971, and since then has been disabled and will continue to be disabled permanently. She has filed an application for social security benefits but was not receiving them yet and did not know when she would receive them, nor what amount she would receive. She and her husband live on a 166 acre farm in a trailer, and there is a $10,000.00 indebtedness against the farm which is held by Mr. Busse's mother. The farm was originally two separate 83 acre tracts. Mr. Busse purchased the first tract prior to their marriage and the title to the tract is in his name alone; the second tract was purchased after their marriage and is in both of their names. They pay Mr. Busse's mother $53.00 per month interest on the loan and she has not pushed them to pay anything on the principal. The second tract was purchased at $100.00 an acre, but she did not know its market value at time of hearing, but she "assumed" it was worth what they paid for it. She and her husband own five motor vehicles: a 1967 Pontiac, a 1949 Chevrolet truck which they use for farm purposes; a 1966 Chevrolet; a 1955 G.M.C. truck; and a 1964 Buick which is in their names, but belongs to the

elder son. All of the motor vehicles are paid for. During the past 16 months the Busses have sold 20 head of cattle and used-up their savings to meet their needs. On cross-examination, plaintiff testified that she did not request any support for the boys between May 14, 1966 and January, 1971, because she "didn't have the need for it" since Mr. Busse was able to support the boys; she said she needed not only the $10.00 per week per child now, but more if she were to send the boys to college.

Neither of the sons testified at the evidentiary hearing on the motions.

Plaintiff contends that the trial court was in error in sustaining the defendant's motion to quash the writ of sequestration because it is the paramount duty of the father to support his children, and that the divorced mother may enforce this duty by means of process based upon the divorce decree awarding such sums as child support and maintenance. With these principles we have no quarrel. However, the third facet of her argument is that a mother and father cannot terminate by agreement the obligation of support between themselves owed by the father to the children. We find this statement is too broad in its implications.

■ Minor children of divorced parents become wards of the court which has the duty of ascertaining the best interests of the child or children, and, of necessity, is vested with broad discretion in all matters pertaining to the child's welfare. Dupree v. Dupree, 357 S.W.2d 241, 242 [1] (Mo.App.1962). The court in a divorce case has the statutory duty to award the custody of the minor children of the parties and is enjoined to make such orders touching their maintenance and support as shall be reasonable in view of the circumstances of the parties and the nature of the case. Allen v. Allen, 433 S.W.2d 580, 582 [1, 2] (Mo.App.1968); § 452.070 RS

Mo.1969, V.A.M.S.[2] Our courts have, however, for a long time recognized that past due child support owing by the divorced husband to the former wife pursuant to a court order for child support and maintenance incorporated into the divorce decree constitutes a debt of the husband to the former wife. Burton v. Burton, 472 S.W.2d 620, 622 [1] (Mo.App.1971), and they become judgments in favor of the former wife. Stemme v. Stemme, 351 S.W.2d 823, 825 [1] (Mo.App.1960). Like any other debt or judgment they are subject to being settled or compromised by the parties and any such settlement or compromise, if supported by adequate consideration, will be respected and enforced by the courts of this state. Messmer v. Messmer, 222 S.W.2d 521, 524 [1] (Mo.App.1949); Cervantes v. Cervantes, 239 Mo.App. 932, 203 S.W.2d 143, 146 [8] (1947); Lochrie v. Lochrie, 232 Mo.App. 153, 108 S.W.2d 178, 180 [3] (1937).

■ We conclude that here the trial court could have found from the evidence that there was sufficient consideration moving from the defendant to the plaintiff and vice versa to constitute a binding settlement or compromise of the past due support as of the 10th day of November, 1967, and thus with respect to that portion of the monies attached by the writ of sequestration the plaintiff was precluded from attaching defendant's pay. We so find because it was on that date that plaintiff was advised that the executed "Consents to Adoption" had been received and were in the possession of her counsel, Mr. Briegel. Although the adoption plans had been abandoned, and although she and Mr. Busse had so advised Mr. Briegel, neither she nor her counsel had advised Mr. Friedman or defendant of the withdrawal of the offer. To be effective, revocation of an offer must be communicated to the offeree before he or she has accepted it. Lynch v. Webb City School District No. 92, 418 S.W.2d 608, 617 [11] (Mo.App.1967). Mr.

2. All statutory references are to RSMo 1969, V.A.M.S. unless otherwise noted.

Briegel received the executed "Consent to Adoption" forms on November 7, 1967, and advised plaintiff that he had them in his possession; she nevertheless did not instruct him to advise defendant that the offer had been withdrawn nor did she undertake to do so herself. It was not until sometime in January, 1971, when defendant received a letter from Mr. Briegel that plaintiff was seeking the past due support money, that defendant learned that an attempt had been made to withdraw the compromise. Defendant had done all he could to carry out the agreement and conclude the paper work to make evident what the terms of the settlement for past due support were.

However, with respect to the support monies due and owing after November 10, 1967, and because of the holding in Cervantes v. Cervantes, supra, in which the court held that an agreement between divorced parents which modified future payments was not binding on the mother where she sought to execute on the father's assets for past due payments in accordance with the amount specified in the divorce decree, we are confronted with a different situation. The rationale behind Cervantes, supra, is that the future support of children can be taken care of only by a proceeding to modify the divorce decree, having regard for the welfare of the children only, and neither the mother nor the father, nor both combined, have any power or agreement to control the court's action. Nevertheless, we conclude that under the peculiar facts of this case, and the stature in which it is presented to this court for review, that holding of Cervantes is not controlling.

In Cervantes, supra, the case came to the appellate court on an appeal from a motion to quash an execution alone. Here, the appeal is from both a motion to quash a writ of sequestration and a motion to modify. Furthermore, in Cervantes, the issue was whether future payments of child support could be *modified,* i. e., reduced from $100.00 per month to $50.00 per month,

without action by the court. Since it is evident that the distinction between payments for past due support, which are debts owed by the father to the mother, and future support payments, which cannot as yet be debts because they have not become due and unpaid, is the basis for those cases enforcing agreements between divorced spouses as to past due monies but not to future support, the critical consideration being that absent some evidence of need or change of conditions the court cannot determine that the necessities of the child will be satisfied if the terms of the agreement entered into between the parties without court sanction is enforced.

In the present case, however, both motions were afforded an evidentiary hearing simultaneously. The uncontradicted evidence was that the needs of the children had been met between November 10, 1967, and the date of the hearing, December 19, 1972. Plaintiff admitted that it really was not the past due payments she was seeking; rather, what she was requesting an increase in the amount allowed in the original divorce decree so that she could meet the needs of the elder son with respect to attendance at college. Under this evidence we conclude that the trial court, trying this case on the basis of equitable principles, was within the exercise of a sound discretion, when he found that the plaintiff had acquiesced in the defendant's failure to remit the child support payments as they became due and owing and that she thereby waived the right to enforce these payments by the writ of sequestration. Kaminski v. Kaminski, 8 Cal.App.3d 563, 87 Cal.Rptr. 453, 455 (1970); Larsen v. Larsen, 5 Utah 2d 224, 300 P.2d 596, 597 [1] (1956). We also conclude that the plaintiff by her failure to pursue her legal remedies over so long a period of time lulled the defendant into a false sense of security; that she deprived him of his rights of visitation with the two boys and thereby achieved a result she very much desired. By failing to advise the defendant, either personally or by way of her at-

torney, that the proposed adoption had been abandoned after the executed "Consents to Adoption" came into her attorney's hands, she sub silentio allowed the defendant to conclude that the adoptions had been consummated. In reliance on this state of affairs the defendant liquidated the trust account which he had set up for the two children and used that money to pay hospital bills and repairs to his home which had been damaged by a tornado. We hold therefore that the trial court did not err in sustaining defendant's motion to quash the writ of sequestration.

■■■■■ Plaintiff's second point we also find without merit. In so holding we have not lost sight of the fact that the children are in fact and law the real parties in interest to this motion to modify and are not in any manner whatsoever bound by the agreement between the parents nor the equitable principles applicable to the plaintiff's claims. Meyer v. Meyer, 493 S.W.2d 42, 47 [6] (Mo.App.1973). In determining the amount to be awarded for the support and maintenance of the children of divorced parents, the court, in an exercise of its sound discretion, must consider the circumstances peculiar to each case. These circumstances include 1) the ability of the father to pay, 2) the needs of the children, and 3) the station in life occupied by a person of the father's financial standing. Bryan v. Bryan, 452 S.W.2d 293, 295 [3] (Mo.App. 1970); Houston v. Snyder, 440 S.W.2d 156, 159 [2] (Mo.App.1969). It is common knowledge that awards for child support are subject to modification upon proof of sufficient change of conditions to warrant modification. Houston v. Snyder, supra, l.c. 159 [2]. However, an award for child support should not be so great as to destroy the father's incentive or impair his position and it is proper to consider his debts. Houston v. Snyder, supra, l.c. 161 [11].

■■■■■ The burden of proof on the motion to modify rests on the plaintiff and it is she who must "show new circumstances from which the trial court could judicially determine that future care required more money than originally allowed, and also show probable cost of that care." Jenkins v. Jenkins, 453 S.W.2d 619, 621 [4] (Mo.App.1970). The evidence produced by the plaintiff would support a finding that the children's needs had increased over the years since 1957 when the original allowances were made. One of the children is ready to enter college, and plaintiff had evidence that the cost of his education for tuition alone was $300.00 per year. Educational expenses have been held by our courts to be a proper factor to be considered in determining the allowance of child support. Bagley v. Bagley, supra; Anderson v. Anderson, 437 S.W.2d 704, 710 [6] (Mo.App.1960). This is dependent, of course, upon the ability of the father to furnish same. From a careful examination of the record, taking into consideration the changed circumstances with respect to the needs of the two boys, together with the change in circumstances in the ability of the defendant to pay any more support money than the $10.00 per week per child awarded by the court in 1957, we are unable to conclude that the trial court abused its discretion in denying plaintiff's motion to modify the child support payments of $10.00 per week per child.

■■■ In its order the trial court denied plaintiff's motion as to "additional child support." In so ordering, the trial court declared that, in the best interests of the children it would not honor the agreement between the parents henceforth and the defendant would thereafter be required to make support payments to the plaintiff in accordance with the decree of April 26, 1957, to-wit: $10.00 per week per child. According to longstanding case law, when a judicial support order is made, such maintenance commences as of the date of the order granting same. McElvain v. McElvain, 221 Mo.App. 135, 296 S.W. 460, 462 [5] (1927).

The judgment of the trial court is therefore affirmed and the defendant is ordered

to pay to the plaintiff the sum of $10.00 per week per child commencing with December 21, 1972, and continuing until each child attains his majority, or until further order of court.

SIMEONE and WEIER, JJ., concur.