Beckey A. SAGOS, n/k/a
Mitts, Respondent,

v.

James Larry SAGOS, Appellant.

No. 51602.

Missouri Court of Appeals,
Eastern District,
Division One.

May 12, 1987.

Gregory M. Sheehan, New Haven, for appellant.

Robert C. Babione, St. Louis, for respondent.

KELLY, Judge.

This appeal follows the decision of the trial court granting judgment for respondent Beckey A. Sagos n/k/a Mitts on her petition for writs of scire facias and revival of judgment against appellant James Larry Sagos for child support not paid to respondent between October, 1975 through September, 1985, and also sustaining respondent's motion to dismiss appellant's motions and defenses in opposition thereto.[1]

Appellant contends that the trial court erred in dismissing his motion to quash and his answer raising the defense of waiver by acquiescence, and in granting respondent's petition for revival of judgment.

We find that the trial court did not err; therefore, we affirm.

Appellant's uncontroverted testimony was that on October 19, 1973, respondent and he were divorced pursuant to a decree of dissolution entered by the Circuit Court of St. Charles County. The decree required appellant to make child support payments of $15.00 per week for each of their three minor children. Before these payments began, appellant relocated from Missouri to Michigan to help his parents operate a small appliance repair shop. In keeping with his obligation of support, appellant began making child support payments pursuant to Michigan's Uniform Reciprocal Enforcement of Support Act (URESA). The URESA order allowed appellant to make reduced child support payments totalling $100.00 per month. The record shows that in 1974 appellant made the required monthly payments pursuant to the URESA order from January, 1974, until May, 1974. The payments were then interrupted during the summer of 1974 when appellant had physical custody over the three children.

Appellant returned the children to respondent at the end of the summer. Appellant then relocated to Kansas City, Missouri, and resumed making the child support payments through the state of Michigan until January, 1975.

In January, 1975, respondent telephoned appellant stating that, because of emotional difficulties, she wanted to transfer custody of the children to him. Appellant agreed so long as he had something from the court permitting the transfer of custody and releasing him from child support obligations. Appellant testified respondent said she would take care of everything regarding an official document.

Apparently respondent then contacted the office of the attorney who represented her at the dissolution proceeding in 1973. The attorney testified at this trial that, although he did not recall a conversation with respondent in 1975, his files contained the original copies of a letter directed to

---

1. Appellant filed motions to dismiss, to quash execution, to stay execution pending hearing, and to modify the decree of dissolution. Respondent filed a motion to modify, but withdrew it at trial.

appellant, a memorandum for his entry of appearance on behalf of respondent and a motion to modify custody. These documents all lacked the address of appellant. The attorney speculated that the original documents had remained in his file because no one ever supplied him with the address of appellant.

Nevertheless, when appellant picked up the children to assume custody in 1975, respondent gave him a document agreeing to the change of custody. This document purported to transfer permanent custody of the children to appellant and to release him from support obligations. Appellant believed the document was legally authentic because respondent told him it had been filed at the courthouse, and because the document had been signed by respondent and duly notarized. From this point forward, appellant made no further child support payments.

Appellant took the children to his Kansas City home. Once in Kansas City, appellant signed a copy of the document respondent had given him and mailed it to Michigan to terminate the Michigan URESA order. The Michigan authorities accepted the document and subsequently entered an order terminating Michigan's jurisdiction to enforce appellant's child support obligation.

The children's stay in Kansas City did not last long. Toward the end of May, 1975, appellant and his children moved back to St. Louis because of the children's desire to be closer to respondent. Respondent's mother assisted appellant in obtaining employment at a restaurant. Throughout this period the children resided with appellant.

During the later part of the summer of 1975, appellant learned his mother was ill in California. Appellant arranged for respondent to care for the children while he was away.

After a two to four week visit in California, appellant returned to St. Louis (in the fall of 1975) with hopes of relocating his family to California. However, during appellant's visit to California, respondent had moved from her St. Charles home, taking the children with her. Appellant contacted respondent's mother and sister but neither knew where respondent and the children were. Appellant made further inquiries through the local police and an attorney, all to no avail.

When appellant felt there was nothing more he could do to find the children, he left Missouri and returned to California. Before leaving Missouri, appellant gave his telephone number and address to several of respondent's relatives with instructions to contact him if they should learn of respondent's whereabouts.

For reasons unimportant here, appellant left California and moved back to the St. Louis area. Although the record is not clear regarding the exact date of this move, we know it occurred sometime between 1976 and 1984. During this period appellant remarried and had a child through this marriage. Appellant's present household also includes two minor children from his second wife's previous marriage.

Appellant heard nothing regarding respondent or their children until March, 1984, when he was served in a support action initiated in Texas with new URESA papers. The action in Texas was subsequently dismissed because respondent had returned with the children to Missouri. Respondent then commenced this present action in St. Charles County.

Following service of the Texas URESA papers, but subsequent to this proceeding, two of the parties' children initiated a visit with appellant. This was the first and only visit appellant had with his children since 1975. The children arranged to have a friend of their mother's drop them off at appellant's home and then pick them up approximately three or four hours later. Since this single visit, appellant's only communication with the children has been by telephone calls and written correspondence.

Appellant maintains as his defense to the writ of scire facias and revival of judgment that all past due child support payments have been waived by respondent's acquiescence. Appellant contends that the decision of the trial court should be reversed, with judgment entered in favor of appel-

lant on his motion to quash the execution, or that the decision be reversed and remanded with direction to the trial court to grant appellant a new trial. We disagree.

 Past due child support payments that are owed by a divorced father to the divorced wife pursuant to a court order for support payments and incorporated into the divorce decree constitute a debt so that accrued and unpaid installments become judgments in favor of the former wife. *Barbara v. Charles,* 632 S.W.2d 92, 93[1] (Mo.App.1982); *Penney v. White,* 594 S.W.2d 632, 635[1–6] (Mo.App.1980). Any past due amounts may be settled or compromised between the parties if there is evidence that such an agreement is supported by adequate consideration. *Kennedy v. Kennedy,* 575 S.W.2d 833, 835[3–4] (Mo.App.1978); *Rodgers v. Rodgers,* 505 S.W.2d 138, 144[3–6] (Mo.App.1974). This court has consistently held, however, that a custodial parent who is entitled to child support payments may waive by acquiescence the right to enforce such payments as they become due and owing. *Grommet v. Grommet,* 714 S.W.2d 747, 749[2] (Mo. App.1986); *Dablemont v. McMinn,* 691 S.W.2d 490, 491[1] (Mo.App.1985); *Buttrey v. Buttrey,* 622 S.W.2d 708, 709[1, 2] (Mo. App.1981); *Rodgers v. Rodgers,* 505 S.W.2d at 145[9, 10]. Acceptance of an amount less than owed or delay in demanding child support payments does not, by itself, rise to the level of waiver by acquiescence. *Vincent v. Vincent,* 584 S.W.2d 152, 153[1] (Mo.App.1979); *Hart v. Hart,* 539 S.W.2d 679, 682[7] (Mo.App.1976).

Waiver by acquiescence was recently reviewed by this court in *Grommet.* Although somewhat distinguishable on its facts, *Grommet* explored the background and development of the defense of waiver by acquiescence in a most comprehensive fashion. *See Grommet v. Grommet,* 714 S.W.2d at 747–51. We see no need to reiterate its thorough analysis and summarily conclude that the defense of waiver by acquiescence has no application.

Appellant's first point contends that the factual circumstances place this case squarely within the ruling of *Rodgers v.* *Rodgers,* 505 S.W.2d 138. In *Rodgers* the mother agreed to release the father from all claims of past due as well as future child support payments in consideration of the father executing a consent agreement which would allow a step-parent adoption. When the father executed and mailed the consent agreements to the mother's attorney, he terminated further child support payments. Sometime after the attorney received the consent agreements, the mother and husband abandoned their plans to consummate the adoption. The father was notified of the revocation of the agreement four years later when the wife filed a motion to modify divorce decree seeking an increase in the support payments to help meet the children's college costs. In affirming the trial court's finding of waiver by acquiescence, this court held that the facts surrounding the father's belief the adoption was consummated was a valid settlement of the past due child support payments. 505 S.W.2d at 146. The court relied heavily on the equitable considerations flowing from the facts of the case. The court, however, disallowed the father's release from future child support payments as an unenforceable, invalid attempt to modify a judgment for child support. *Id.* at 145; *see Cervantes v. Cervantes,* 239 Mo.App. 932, 203 S.W.2d 143, 146[8] (1947).

We agree with appellant that an examination of the facts in the case at bar does reveal some similarities to those present in *Rodgers.* In both cases the wife failed to advise the father that the proposed proceedings had been abandoned while allowing the father to believe the proceedings had actually been consummated. Also, certain actions taken by the fathers in both cases reflect reliance induced by the actions of the wives.

Appellant points out that the only factual difference between *Rodgers* and the case at bar is that here the wife disappeared with the children after the documents in question had been executed. We find this difference to be fatal to appellant's position. Waiver by acquiescence is an equitable doctrine. Appellant cannot equitably claim his

duty of support was permanently terminated because of the temporary period of custody exercised by him during 1975.

The court in *Rodgers* relied on the equitable position of the father after he executed the consent forms in holding there was a waiver. 505 S.W.2d at 145–146[9–10]. The decisive factors the court construed were that the father was denied visitation rights, and the father liquidated a trust account set up for the children. Additionally, the wife in *Rodgers* admitted she was seeking an increase in the original award so she could meet her children's college expenses and was not really interested in collecting past due amounts. *Id.* The *Grommet* court, in reviewing the *Rodgers* holding, emphasized that waiver by acquiescence is an equitable doctrine, and even though the *Rodgers* court used the term "waiver" to explain the wife's action, the concept of "equitable estoppel" was actually being employed. 714 S.W.2d at 750[4].

■ There is no such "equitable estoppel" available to appellant here. Had appellant continued custody, thereby changing his position, he could claim relief. However, it was respondent's position that was changed, not that of appellant. The children were under the respondent's physical custody for a ten year period without any support payments from appellant. While acquiescence can be invoked as a shield to protect injustice, it is not available as a sword to retain an undeserved windfall. The past due amounts constitute a valid debt which became judgments in favor of respondent. *Burton v. Burton,* 472 S.W.2d 620, 622[1] (Mo.App.1971); *Stemme v. Stemme,* 351 S.W.2d 823, 825[1] (Mo.

App.1961). To invoke the principles of equity in the situation would be entirely inappropriate.

■ Appellant contends in his second point that the trial court erroneously applied the law. In viewing the facts surrounding the execution and validity of the purported "change of custody" agreement in 1975, the findings of the trial court must be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). The trial court may believe or disbelieve all or any part of any witness' testimony; that appellant's evidence is uncontradicted may not satisfy his burden of persuasion. *Cave v. Cave,* 593 S.W.2d 592, 595[1–5] (Mo.App.1979).

Based on these standards, and giving due deference to the trial court's superior ability to judge the credibility of witnesses, the trial court's rejection of appellant's motion to quash the judgment and of his asserted defense of waiver by acquiescence were supported by substantial evidence. The trial court's decision was within its sound discretion. Therefore, we affirm its judgment in favor of respondent.

SNYDER, C.J., and CRIST, J., concur.