964 P.2d 645

**Susan A. THIELEN, Plaintiff–Appellee,**

v.

**David B. THIELEN, Defendant–Appellant.**

**No. 20714**

Intermediate Court of Appeals.

Sept. 29, 1998.

As Amended Nov. 4, 1998.

David B. Thielen, pro se Defendant-Appellant, on the brief.

John H. Murphy, on the brief, for Plaintiff-Appellee.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

BURNS, Chief Justice.

Defendant–Appellant David Thielen (Defendant or David) appeals the family court's April 24, 1997 Judgment against him in favor of Plaintiff–Appellee Susan Thielen (Plaintiff or Susan) in the amount of $24,214.72. We affirm.

We decide that where the payor-spouse has been ordered by the court to pay a total of $57,600 in spousal support in thirty-six (36) monthly installments and, on October 27, 1994, when the payor-spouse owes $16,614.72 and will owe an additional $1,600.00 on November 1, 1994, and an additional $1,600.00 on the first day of each month thereafter through February 1, 1996, and the payee-spouse accepts $18,000.00 from the payor-spouse in full satisfaction of the payor-spouse's obligation to pay past, present, and future spousal support, the agreement is invalid absent the approval of the family court.

## BACKGROUND

Chronologically, the relevant events occurred as follows:

On May 27, 1993, the family court entered its Decree Granting Divorce and Awarding Child Custody (Divorce Decree). In relevant part, it ordered David to pay $57,600.00 in spousal support to Susan in monthly installments of $1,600.00 per month for thirty-six (36) months payable on the first day of each month commencing March 1, 1993. It also ordered David to pay $1,743.72 of Susan's VISA debt.

On March 29, 1994, Susan filed her Motion for and Affidavit for Order to Show Cause for Relief After Order or Decree. On August 3, 1994, the family court entered its Order on Plaintiff Susan A. Thielen's Motion and Affidavit for Order to Show Cause for

Relief After Order or Decree Filed on March 29, 1994 and Reviewed on July 5, 1994 (August 3, 1994 Order), stating in relevant part as follows:

[T]he Court having considered the testimony, arguments and evidence offered by the parties and having good cause therefrom, hereby orders the following:

1. Defendant continues to owe alimony to Plaintiff for the months of March, April, May, June and July of 1994 at the monthly rate of one thousand six hundred dollars ($1,600/month). Consequently, Defendant currently owes Plaintiff a total amount of eight thousand dollars ($8,000.00) in alimony for the months of March, April, May, June & July of 1994. Plaintiff shall be awarded judgment against Defendant in the amount [of] $8,000.00.

\* \* \*

3. Defendant has still failed to transfer to Plaintiff the three thousand six hundred seventy one dollars ($3,671.00) received by Defendant as insurance proceeds for the truck possessed by Plaintiff. Plaintiff shall be awarded another judgment against Defendant in the amount [of] $3,671.00.

4. Defendant has still failed to pay Plaintiff one thousand seven hundred forty three dollars and seventy two cents ($1,743.72), representing Defendant's share of Plaintiff's VISA bill. Plaintiff shall be awarded another judgment against Defendant in the amount of $1,743.72.

5. Defendant shall be required to pay to Plaintiff an additional two hundred sixty three dollars ($263.00) for Plaintiff's attorney's fees and costs incurred as a result of the review hearing.

David explains the above order in his opening brief as follows:

In the August 3, 1994 order on Susan's 1993 Motion for Order to Show Cause, the court found that David had paid Susan all alimony due her for the months of March 1993 through and including February 1994. The court found that he owed Susan $8,000 in alimony for the months of March, April, May, June, and July 1994, $3,671 in insurance proceeds, and $1,743.72 for Susan's

VISA bill, for a total due of $13,414.72. Between the August 3, 1994 order and October 27, 1994, the date of the release, another three months of alimony accrued—for August, September, and October—at the rate of $1,600 per month, for a total of $4,800. The court found that David made a payment of $1,600 to Susan in September 1994. Thus, it found that on October 27, 1994, David owed Susan a total of [$]16,614.72.

(Record citations omitted.) An additional $1,600.00 would have been due on November 1, 1994 and on the first day of each month thereafter through February 1, 1996.

On October 27, 1994, David paid Susan $18,000.00, and David and Susan each signed, before a notary public, a document stating in relevant part as follows:

Re: Completion of Divorce Decree—Financial Responsibilities

\* \* \*

Upon receipt of this cashier[']s check for $ 18,000.00, David B. Thielen will have satisfied the Divorce Decree and all financial obligations to Susan Thielen.

Susan Thielen will solely be responsible for any current or future legal costs upon receipt of this check.

David B. Thielen will be sole recipient of any funds related to any pay offs on properties made following the divorce decree.

By signing below, I am in receipt of the check listed above and understand and agree to this agreement.

On February 7, 1996, Susan filed her Motion and Affidavit for Order to Show Cause for Relief After Order or Decree seeking alimony of $21,014.72 plus attorney fees.

On February 29, 1996, David's counsel filed a memorandum in opposition to Susan's February 7, 1996 motion in which he stated in relevant part as follows:

In October of 1994, in light of Defendant's rapidly declining financial affairs, Defendant decided that the only way to survive financially was to refinance the Hauula [Hau'ula] property, thereby obtaining a lower monthly payment and some

cash. Affidavit of David B. Thielen. Defendant applied for refinancing and was told he could not qualify because of the monthly alimony obligation. *Id.*

Accordingly, in October of 1994, Defendant offered Plaintiff a full and final settlement of his alimony obligation as set forth in the Divorce Decree to Plaintiff in exchange for a lump sum payment of $18,000.00, money obtained from the office trailer fire insurance proceeds. *See* Affidavit of David B. Thielen. At the time of the offer, Defendant explained to Plaintiff in detail the reasons for his precarious financial situation and informed Plaintiff that he considered filing bankruptcy for Garden Isles if he was not able to refinance the Hauula [Hau'ula] property. Neither Defendant nor Plaintiff were at the time represented by legal counsel. Affidavit of David B. Thielen.

Susan's February 7, 1996 motion was heard on March 5, 1996. It appears that the family court notified the parties of its decision on April 16, 1996. On May 8, 1996, David filed Defendant's Motion for Reconsideration of the Amended Decision Dated April 16, 1996 or Alternatively for Appeal. On May 20, 1996, one day before the family court decided David's motion for reconsideration, the family court entered its Findings of Fact and Conclusions of Law; Decision and Order. Finding of fact no. 3 states "[t]hat on October 27, 1994, [David] paid [Susan] eighteen thousand dollars ($18,000.00) and [Susan] signed a 'release' of [David's] financial responsibilities under said Decree." Conclusion of law no. 4 states "[t]hat the 'release' does not constitute an accord and satisfaction because there was no dispute. Additionally, there was no consideration."

On May 21, 1996, the family court orally granted David's motion for reconsideration but denied David's request for permission to introduce evidence of payments made to Susan prior to the July 5, 1994 hearing that led to the August 3, 1994 Order.

On August 2, 1996, Susan filed her Amended Motion and Affidavit for Order to Show Cause for Relief After Order or Decree. In it she stated that "[t]his Motion and Affidavit

are intended to supplement the original Motion and Affidavit filed herein on 2–7–96."

After hearings on March 5, May 21, July 30, September 10, and November 12, 1996, the family court, on December 27, 1996, entered its Findings of Fact and Conclusions of Law which state in relevant part as follows:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

\* \* \*

**FINDINGS OF FACT:**

1. That the decree on file herein required Defendant to pay alimony of $57,600.00 in thirty-six (36) monthly installments of sixteen hundred dollars ($1,600.00) per month commencing on March 1, 1993.

2. That on October 27, 1994, Defendant owed Plaintiff sixteen thousand six hundred fourteen dollars and seventy-two cents ($16,614.72) ($3,671 and $1,743.72 pursuant to paragraphs 3 and 4 of the Order filed August 3, 1994 and $11,200 of alimony including credit for the $1,600 payment made on September 12, 1994).

3. That on October 27, 1994, Defendant paid to Plaintiff eighteen thousand dollars ($18,000.00) and Plaintiff signed a "release" of Defendant's financial responsibilities under said Decree.

4. That Plaintiff understood the language of the release and was not deceived.

5. That on October 27, 1994 Defendant paid to Plaintiff $1,385.28 more than was presently due.

6. That four [sic] days later on November 1, 1994, pursuant to the Decree herein, an additional $1,600 would have been due to Plaintiff from Defendant.

7. That since the October 27, 1994 payment, Defendant has not made any payment pursuant to the Decree herein.

8. That pursuant to the alimony provisions of said Decree, there remained fifteen installments (one in 1994, twelve in 1995, two in 1996) plus $214.72 (the balance of the November 1994 installment).

**CONCLUSIONS OF LAW:**

Based on the foregoing Findings of Fact the Court concludes as a matter of law:

1. That the payment of $1,385.28 four [sic] days prior to the due date of a $1,600 installment did not constitute adequate consideration for the release; and

2. That Plaintiff is entitled to a judgment against Defendant in the amount of $24,214.72.

3. Each party shall bear her/his own attorney's fees and costs.

■ On April 24, 1997, the family court entered its judgment in accordance with the December 27, 1996 Findings of Fact and Conclusions of Law.[1]

## DISCUSSION

### 1.

David contends that conclusion of law no. 1 "is in error because where a creditor accepts a part payment before the maturity of the debt, there is sufficient new and additional consideration for the creditor's promise to discharge the entire debt."

With respect to amounts currently or past due, the various rules of law are as follows:

### (a)

■ "[A]s long as the promised performance differs in some way from what is due, there is consideration for the discharge." 1 E.A. Farnsworth, *Farnsworth on Contracts* § 4:24 (2d ed.1998).

Under the Restatement (Second) formulation, a similar performance will constitute consideration only if it is different from what was originally required of the debtor in a way which reflects more than pretense of a bargain. Under either formulation, if a debtor pays his debt or part of it before it is due, or in a medium of payment different from that for which he was bound, ... there is sufficient consideration to support a return promise by the creditor so long as there is no illegality.

3 R. Lord, *Williston on Contracts* § 7:27 (4th ed.1992) (hereinafter, *Williston* ) (quotation marks and footnotes omitted).

### (b)

■ [W]here the larger sum is admitted to be due, or the circumstances of the case show that there was no good reason to doubt that it was due, the release of the whole upon payment of part will not be considered as a compromise, but will be treated as without consideration and void.

*Fire Insurance Ass'n v. Wickham,* 141 U.S. 564, 577, 12 S.Ct. 84, 35 L.Ed. 860 (1891).

■ "[T]he agreement of a creditor to discharge the whole debt then and there due in consideration of the payment of part is unsupported by sufficient consideration. This proposition has support in almost every jurisdiction where the enforcement of the agreement has been sought." *Williston, supra,* § 7:26.

### (c)

"The general rule is that the payment of a smaller sum in full discharge of an unliquidated or disputed claim is a good accord and satisfaction supported by sufficient consideration." *Trask v. Shinn,* 41 Haw. 374, 376 (1956) (citation omitted).

■ "[O]nly by an agreement under seal, where the seal retains validity, or by a promise for consideration can the whole or part of a debt which is represented by no tangible symbol capable of delivery be discharged." *Williston, supra,* § 7:26.

1. The April 24, 1997 Judgment refers to the December 27, 1996 Findings of Fact and Conclusions of Law; Decision and Order. However, the December 27, 1996 Findings of Fact and Conclusions of Law; Decision and Order does not contain a Decision and Order.

Plaintiff–Appellee Susan Thielen contends that we lack appellate jurisdiction because Defendant–Appellant David Thielen's May 21, 1997 Notice of Appeal is untimely with respect to the December 27, 1996 Findings of Fact and Conclu-sions of Law; Decision and Order. We disagree. The December 27, 1996 Findings of Fact and Conclusions of Law; Decision and Order is not a final judgment/decree/order. This fact is made clear by its conclusion of law no. 2 which states as follows: "That Plaintiff is entitled to a judgment against Defendant in the amount of $24,-214.72." In other words, it contemplates the subsequent entry of a judgment. Thus, the April 24, 1997 Judgment is the final and appealable judgment/decree/order.

## (d)

■ The payment of a smaller sum in satisfaction of a larger is not a good discharge of a debt.... This rule does not apply, however, ... where part payment is made before the debt is due, or at another place, or in a different medium than that required by the contract.

*Jones v. Vennerberg,* 133 Neb. 143, 274 N.W. 494, 496 (Neb.1937) (quoting 13 C.J. 357 (1937)). *See also, Wener v. Commission of Internal Revenue,* 242 F.2d 938, 944 (9th Cir.1957); *Crow v. Gore,* 85 F.2d 291, 293–94 (D.C.Cir.1936).

When a debtor pays a creditor an amount less than the entire liquidated claim before the debt is due or the obligation to pay it has matured, and the creditor accepts the early payment in full satisfaction of the entire claim, such payment is a sufficient consideration to support an accord and satisfaction of the claim.

1 Am.Jur.2d, *Accord and Satisfaction,* § 36 (1994).

Even in the case of a liquidated and undisputed money debt, a payment of anything by the debtor prior to the maturity of the debt is a performance that it was not his legal duty to render. The payment of any sum whatever prior to maturity of the debt is a sufficient consideration for a promise; and it operates as satisfaction of the entire debt if the creditor accepts it as such. Even if the amount paid is relatively small and is much less than the present value of the debt, discounting it at market rates of interest, it operates as satisfaction in full if the creditor accepts it as such. Even the very early cases admitted this to be the law[.]

6 A. Corbin, *Corbin on Contracts* § 1282 (1962) (footnote omitted).

■ In the Thielens' case, as noted in unchallenged findings of fact nos. 5 and 6, David owed Susan $16,614.72 on October 27, 1994. Absent an amendment of the Divorce Decree by the family court, that debt would have increased to $18,214.72 on November 1, 1994, and thereafter would have increased $1,600.00 per month through February 1, 1996. However, on October 27, 1994, while the debt was still $16,614.72 and five days before the debt increased to $18,214.72, David paid Susan $18,000.00, and David and Susan agreed that the payment was made and received in satisfaction of all of David's financial obligations to Susan under the May 27, 1993 Divorce Decree. In other words, David paid, and Susan accepted, the $16,-614.72 that was due, plus an additional $1,385.28 five days before it was due, in full and final payment of all of David's financial obligations to Susan under the Divorce Decree.

■ We note that in 1 Am.Jur.2d, *Accord and Satisfaction,* § 32 (1994), it is stated that "[t]here can be no accord and satisfaction of a judgment which will accrue in the future." A footnote cites *Grommet v. Grommet,* 714 S.W.2d 747 (Mo.Ct.App.1986), which cites *Rodgers v. Rodgers,* 505 S.W.2d 138 (Mo.Ct. App.1974), which cites *Cervantes v. Cervantes,* 239 Mo.App. 932, 203 S.W.2d 143 (Mo.Ct.App.1947).

In *Grommet,* the ex-husband was ordered to pay the ex-wife $300.00 per month spousal support commencing July 1978. In October 1980, the ex-husband informed the ex-wife that he could only pay $150.00 per month. According to the ex-husband, the exwife agreed. Thereafter, the ex-husband paid $150.00 per month. In May 1983, the ex-wife sought resumption of payments of the original $300.00 per month. The ex-husband immediately moved to modify. The trial court granted the ex-husband's motion.

The ex-wife sought execution and garnishment of $10,509.26 in arrearages. The trial court found that in October 1980 ex-wife agreed to the reduction to $150.00 per month and concluded that such acquiescence amounted to an accord and satisfaction.

The ex-husband owed $300.00 per month and he paid $150.00 per month. In our view, the rule stated in section (b) above applies. The agreement between the ex-wife and the ex-husband is void for lack of consideration. The Missouri appellate court, however, ruled that

[i]n holding that acquiescence in the reduction of payments amounted to an accord

and satisfaction, the trial court erroneously declared the law. The agreement described by [the ex-husband] related not to past due monthly payments but only to those coming due in the future. There can be no accord and satisfaction of a judgment which will accrue in the future. *Rodgers v. Rodgers,* 505 S.W.2d 138, 145 (Mo.App.1974).

*Grommet,* 714 S.W.2d at 749.

The *Grommet* opinion states that the *Rodgers* opinion is the precedent for its conclusion that "[t]here can be no accord and satisfaction of a judgment which will accrue in the future." *Id.*

In *Rodgers, supra,* the April 1957 divorce decree awarded custody of the two boys to the mother and ordered the father to pay child support of $10.00 per week.

In March, 1966, when [the father] went to pick up the boys at [the mother's] home, [the mother] came out to [the father's] car and informed [the father] that the boys did not want to go with him; that she did not want him around her or the boys; that she didn't need his money; that she and her husband made $20,000.00 a year and that [the father] was to "keep my damn money and stay away from them and stay out of their life." [The father] left without the children and had not seen them again until the date of the court hearing on December 19, 1972.

*Rodgers,* 505 S.W.2d at 141.

In the meantime, on July 8, 1967, the father consented to the adoption of the boys by the mother's husband upon condition that all of the father's past and future child support obligation was satisfied. The father reasonably thought that the adoption subsequently had occurred. He was not informed that the unwillingness of the boys to change their last names prevented the accomplishment of the adoptions.

In March and April, 1972, the mother moved to increase child support payments and to compel the payment of unpaid child support. The trial court denied both requests. The appellate court affirmed. It concluded that the adoption agreement had enforceably forgiven the child support past

due but, citing *Cervantes* that the adoption agreement could not and did not enforceably forgive the future child support. It stated that *Cervantes* "held that an agreement between divorced parents which modified future payments was not binding on the mother[.]" *Rodgers* 505 S.W.2d at 145. In its view,

the rationale behind Cervantes, supra, is that the future support of children can be taken care of only by a proceeding to modify the divorce decree, having regard for the welfare of the children only, and neither the mother nor the father, nor both combined, have any power or agreement to control the court's action....

... Since it is evident that the distinction between payments for past due support, which are debts owed by the father to the mother, and future support payments, which cannot as yet be debts because they have not become due and unpaid, is the basis for those cases enforcing agreements between divorced spouses as to past due monies but not to future support, the critical consideration being that absent some evidence of need or change of conditions the court cannot determine that the necessities of the child will be satisfied if the terms of the agreement entered into between the parties without court sanction is enforced.

*Id.*

The *Rodgers* opinion states that *Cervantes* is the relevant precedent that led to its ruling. In *Cervantes,* the divorce decree ordered the father to pay child support of $100 per month. When the mother sought to enforce her right to past-due child support, the father alleged that she had agreed to reduce child support to $50 per month. The appellate court affirmed the trial court's conclusion that the agreement was void because "[t]he trial court, alone, has jurisdiction and authority to modify or change the allowance for future maintenance of the children as provided in the decree." *Cervantes,* 203 S.W.2d at 147.

### 2.

■ The *Rodgers–Cervantes* rule is good law in Hawai'i. In *Napoleon v. Napoleon,* 59

Haw. 619, 585 P.2d 1270 (1978), the family court had ordered the father to pay $200 per month for the support of two minor children. When the father was $1,700 delinquent, he and the mother agreed that if he paid $3,000 for the next three years, his child support obligation would forever terminate. The Hawai'i Supreme Court concluded in relevant part as follows:

> Under HRS § 580–47 the court is clearly empowered with continuing jurisdiction regarding the support of the parties' minor children. Moreover, the court acquired *inherent*, continuing jurisdiction over a minor once the issue of his welfare was placed before the court. . . .
>
> In the light of the mandate of the statute and the continuing jurisdiction of the court over the minor, the agreement, lacking the court's approval, is clearly not a valid and binding agreement, even as between the parties.
>
> We, therefore, further conclude that the court below erred in holding that appellant has waived her right to seek support for the minor in question.
>
> In our opinion, not only did the agreement lack approval of the court, but such agreements are void as a matter of public policy.[2]

*Id.* at 624, 585 P.2d at 1273–74 (citations omitted) (footnote added). In other words, agreements by the custodial parent to accept a lump sum payment in satisfaction of the child's court-ordered right to future child support are invalid absent the family court's approval.

In *Grommet, supra*, the Missouri court of appeals applied the *Napoleon–Rodgers–Cervantes* child support rule to spousal support without any relevant discussion or explanation. The general question is whether the *Grommet* spousal support rule is good law in Hawai'i. Does the *Napoleon–Rodgers–Cervantes* child support rule apply in a spousal support context? The specific question is whether the *Napoleon–Rodgers–Cervantes* child support rule applies in a spousal support context where the payor spouse has been ordered by the court to pay a total of $57,600 spousal support in thirty-six (36) monthly installments and, on October 27, 1994, when the payor spouse owes $16,614.72 and will owe an additional $1,600 on November 1, 1994, and an additional $1,600 on the first day of each month thereafter through February 1, 1996, the payee spouse accepts $18,000 from the payor spouse in full satisfaction of the payor spouse's obligation to pay past and future spousal support. We hold that the answer to the specific question is yes.

As specified in Hawai'i Revised Statutes § 580–47(c) (Supp.1997), the family court has the power

> to revise its orders providing for the support, maintenance, and education of the children of the parties upon a showing of a change in the circumstances of either party or any child of the parties since the entry of any prior order relating to the support, maintenance, and education.

As noted in the following quote, the family court has a similar power with respect to spousal support.

> We have previously concluded that a spousal support order is always subject to the further order of the family court upon a material change in the relevant circumstances of either party even though the order does not explicitly so state. *Beach v. Beach,* 6 Haw.App. 66, 708 P.2d 143 (1985). We now conclude that the family court's spousal support order is always subject to the further order of the family court upon a material change in the relevant circumstances of either party even when the order explicitly states otherwise.

*Vorfeld v. Vorfeld,* 8 Haw.App. 391, 401, 804 P.2d 891, 897 (1991).

Thus, for the same reasons as are stated in *Napoleon* with respect to child support, when the parties agree to terminate court-ordered spousal support payable in the future, the agreement is invalid absent family court's approval. Only the family

---

2. Although this paragraph can be read as concluding that even the family court is not authorized to approve such agreements, we do not read it that way. It does appear, however, that the family court's discretion to approve such agreements is quite narrow.

court has the power to change court-ordered spousal support payable in the future.

### 3.

 David contends that, at the 1996 hearings, the family court reversibly erred when it denied David's requests to introduce evidence of other payments David made to Susan prior to July 5, 1994. In David's words,

> David alternatively argues that the [family] court erred in not allowing him to introduce evidence that he actually owed Susan less than $16,614.72 on the date Susan signed the release. Had David been allowed to introduce this evidence, he could have shown that he indeed gave adequate consideration for Susan's discharge of his debt.

The August 3, 1994 Order was not final and appealable because it, like the December 27, 1996 Findings of Fact and Conclusions of Law, expressly contemplated the subsequent entry of a judgment. The August 3, 1994 Order resulted from the March 5, 1994 hearing. To the extent that David wanted to prove payments to Susan post-March 5, 1994 and pre-July 5, 1994, the family court abused its discretion in not allowing David to do so. To the extent that David wanted to prove payments to Susan on and prior to March 5, 1994, it was within the family court's discretion not to allow David to do so absent a satisfactory explanation why David did not present such evidence at the March 5, 1994 hearing.

## CONCLUSION

Accordingly, we affirm the April 24, 1997 Judgment.